UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                              Plaintiff,                         **MEMORANDUM AND ORDER**

  - against -                                            17-CV-2927 (RRM) (CLP)

CHAVA WOLIN as Fiduciary of the
Estate of LEO ZIEGEL,
ANNETTE WIESEL, and
DORIS GREENBERG,

                              Defendants.
-----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff United States of America (the "United States" or the "Government") brings this action against defendant Chava Wolin in her capacity as Fiduciary of the Estate of Leo Ziegel and against defendants Annette Wiesel and Doris Greenberg (collectively, "the Daughters"), who inherited Ziegel's beneficial interests in a foreign trust and a Swiss bank account. The United States seeks to recover an FBAR penalty posthumously assessed on Ziegel for failing to disclose his interest in the bank account to the Internal Revenue Service. Wiesel now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Government's second amended complaint. For the reasons set forth below, the motion to dismiss is denied.

## BACKGROUND

      The following facts are drawn from the United States' second amended complaint ("SAC") and are assumed to be true for purposes of this memorandum and order. Sometime prior to April 1983, Ziegel engaged the services of Auctoriana Anstalt, a Swiss company with offices in Lichenstein. (SAC (Doc. No. 31) ¶¶ 8, 9.) On April 18, 1983, Auctoriana Anstalt established in Lichtenstein a foundation named Assadah Stiftung ("Assadah"). (*Id.* ¶¶ 10–11.)

That same day, an Auctoriana Anstalt's employee who served as Assadah's trustee, opened a bank account (the "Account") with the Union Bank of Switzerland ("UBS"). (*Id.* ¶¶ 12–13.) Ziegel subsequently signed a UBS signature card for the Account and created a trust agreement between Assadah and UBS with regards to the Account. (*Id.* ¶¶ 14–15.)

On July 19, 2002, Assadah appointed a new trustee, Prokurations Anstalt of Valduz, Lichtenstein ("Prokurations"). (*Id.* ¶ 16.) On both August 28, 2002, and November 22, 2004, a representative of Prokurations signed UBS forms identifying Ziegel as the beneficial owner of Assadah and the Account. (*Id.* ¶ 17.) On various occasions between 2002–2009, Ziegel met or spoke with UBS employees about withdrawing cash from the Account and about investments of the Account's assets. (*Id.* ¶ 18.) Between 1999 and 2008, Ziegel made cash withdrawals from, and wrote checks on, the account. (*Id.* ¶ 19.) In addition, from 1999 to 2009, Ziegel earned interest and dividend income and received investment sales proceeds from the Account. (*Id.* ¶ 20.)

Ziegel did not report any income or loss from the Account, or otherwise disclose the existence of the Account, to the IRS on his 2008 federal income tax return or at any other time. (*Id.* ¶ 21.) Indeed, he did not even advise the accountant who prepared his 2008 federal income tax return that the Account existed. (*Id.*) Ziegel also failed to file a Report of Foreign Bank and Financial Accounts ("FBAR") with regard to the 2008 calendar year on or before June 30, 2009, as required by 31 U.S.C. § 5314 and 31 C.F.R. § 103.27(c) (2009). (*Id.* ¶¶ 27–28.)

Ziegel died testate on April 4, 2014. (*Id.* ¶ 2.) On May 15, 2015, in accordance with 31 U.S.C. § 5321(a)(5)(C)(i), a delegate of the Secretary of Treasury assessed a civil penalty against Ziegel's estate (an "FBAR penalty") in the amount of $1,435,235.00 for the willful failure of Ziegel to disclose the Account to the IRS. (*Id.* ¶ 30.)

This Action

On May 12, 2017 – more than three years after Ziegel's death – the United States commenced this action to recover the FBAR penalty from his estate. The only defendant named in the original complaint was Ziegel's daughter, Wiesel, who was named executrix of the estate in Ziegel's will. (Compl. (Doc. No. 1) at ¶ 3.) On June 26, 2017, the day before her answer was due, Wiesel's attorney notified James Yu, counsel for the plaintiff, that Wiesel was declining to serve as executrix. (Motion for Extension (Doc. No. 6).) In early August 2017, Yu learned that Ziegel's granddaughter, Wolin, was petitioning the Surrogate's Court in Queens County for Letters of Administration *cum testament annexo*. (*Id.*) Until that petition was granted on January 2, 2018, Yu was forced to repeatedly request extensions of time to serve process on the estate because there was not yet a fiduciary to serve. (Docs. No. 6, 8, 9, 31.)

On January 30, 2018 – less than one month after the Surrogates' Court granted Wolin's petition – the United States filed an amended complaint (the "FAC"). (FAC (Doc. No. 11).) The FAC substituted Wolin, in her capacity as "Fiduciary of the Estate of Leo Ziegel," for Wiesel. (*Id.*)

On July 5, 2019, the United States amended the summons and complaint for a second time, adding the Daughters as defendants. According to the SAC, sometime prior to Ziegel's death, the Daughters were identified as contingent co-beneficiaries of his interest in Assadah and the Account. (SAC ¶ 40.) Accordingly, when Ziegel died, his entire interest in Assadah and the Account automatically transferred to Wiesel and Greenberg in equal shares. (*Id.* ¶ 41.)

The SAC, the subject of the instant motion to dismiss, alleges four causes of action. The first cause of action, brought solely against Wolin as Fiduciary of the Estate, principally seeks to recover the FBAR penalty from the estate, along with a late-payment penalty pursuant to 31

3

U.S.C. § 3717(c)(2) and 31 C.F.R. § 5.5(a), and accrued interest. (*Id.* ¶¶ 32–33.) The SAC specifically alleges that this claim is timely under 31 U.S.C. § 5321(b)(2) because it was filed within two years of May 15, 2015 – the date that the FBAR penalty was assessed. (*Id.* ¶ 35.)

      The second cause of action, brought solely against the Daughters, alleges that the transfer of Ziegel's interest in Assadah and the Account to these defendants upon Ziegel's death was constructively fraudulent under 28 U.S.C. § 3304 and voidable by the United States. (*Id.* ¶ 45.) The Government alleges that Ziegel was in violation of 31 U.S.C. § 5314(a) when these assets automatically transferred to the Daughters at the time of his death in 2014; that the Estate did not receive "reasonably equivalent value in exchange" for the transfer; and, upon information and belief, that the transfer rendered Ziegel and/or the estate insolvent. (*Id.* ¶¶ 42–44.) Based on these allegations, the SAC alleges that the transfer is voidable because it was "constructively fraudulent as to the United States as a creditor" of Ziegel, and that the Daughters "are each personally liable to the United States in the amount of the lesser of the value of Mr. Ziegel's interest in Assadah and the Account as of the date of transfer, or the amount of the FBAR penalty (plus statutory accruals)." (*Id.* ¶ 45.)

      The third cause of action also seeks to void the transfer of Assadah and Account assets from Ziegel to the Daughters, but on the theory that it constitutes a fraudulent conveyance in violation of sections 273 and 278 of New York Debtor and Creditor Law. The allegations supporting the cause of action are nearly identical to those supporting the second cause of action; the SAC alleges that the estate did not receive "fair consideration in exchange" for the transfer which, upon information and belief, rendered Ziegel insolvent. (*Id.* ¶¶ 47–48.) As in the second cause of action, the Government alleges that this transfer is voidable because it was "constructively fraudulent as to the United States as a creditor" of Ziegel and argues that the

Daughters "are each personally liable to the United States in the amount of the lesser of the value of … Ziegel's interest in Assadah and the Account as of the date of transfer, or the amount of the FBAR penalty (plus statutory accruals)." (*Id.* ¶ 45.)

The fourth cause of action, brought solely against the Daughters, alleges that these defendants were unjustly enriched from the transfer of Ziegel's interest in Assadah and the Account. (*Id.* ¶ 54.) It argues that the Daughters "each have actual or constructive knowledge of the FBAR penalty and that it should be paid from the funds in the Account." (*Id.*) Therefore, the Daughters "should have reasonably expected to pay and were unjustly enriched from the transfer of … Ziegel's interest in Assadah and the Account." (*Id.*)

<u>Wiesel's Motion to Dismiss</u>

Wiesel now moves to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Memorandum in Support of Motion to Dismiss ("Defendant's Memo") raises a total of four arguments. First, Wiesel argues that the United States' FBAR claim must be dismissed because an FBAR penalty does not survive the death of the party on whom the penalty was imposed. (Defendant's Memo (Doc. No. 57-2) at 6.) Wiesel claims that this an issue of first impression but, citing to *United States v. NEC Corp*, 11 F.3d 136 (11th Cir. 1993) (as amended Jan. 12, 1994), urges the Court to utilize a three-factor test which is used in other contexts. Applying this test, she argues that an FBAR penalty is penal in nature, and not a remedial action which would survive the death of Ziegel. (Defendant's Memo at 6–10.)

Second, Wiesel argues that the FBAR claim should be dismissed as untimely under 31 U.S.C. § 5321(b)(2), which requires an action to be commenced within two years of the date the FBAR penalty was assessed. (Defendant's Memo at 11.) Wiesel concedes that the original complaint naming her as executrix was filed within the two-year period but argues that the

amended complaint which first named Wolin as fiduciary should not relate back to the date of the original complaint under Fed. R. Civ. P. 15(c)(1). (Defendant's Memo at 11–12.)  In support of this argument, Wiesel has submitted an affidavit from Wolin stating that she did not learn of this lawsuit until late October 2017.  Wiesel argues Wolin did not receive notice or have knowledge of this lawsuit within the period provided by Rule 4(m) for serving the summons and complaint. (Defendant's Memo at 14.)

Third, Wiesel argues that the complaint fails to state a federal or state-law claim for fraudulent transfer or conveyance. (*Id.* at 14–16.)  She disputes the United States' contention that an automatic transfer that takes place as the result of the death of a person can constitute a fraudulent transfer or conveyance, arguing that a volitional act on the part of the conveyor or recipient(s) to distribute the assets is required. (*Id.*)  She also argues that claims seeking to hold beneficiaries of a conveyance liable for money damages greater than the amount the beneficiaries received should be dismissed. (*Id.*)

Finally, Wiesel argues that the United States' claim for unjust enrichment under federal common law and/or New York law similarly fails to state a claim and should be dismissed. (*Id.* at 16.)  She argues that the SAC does not allege that she ever received a distribution from Assadah and, accordingly, does not plausibly allege that she was "enriched." (*Id.* at 17.)  She also argues that the SAC fails to sufficiently allege that the Government had a claim to, or a "reasonable expectation" to receive, the assets held by Assadah. (*Id.*)

The United States opposes Wiesel's motion in all respects.  First, it argues that the FBAR penalty survived Ziegel's death because it was remedial, not penal.  Next, it contends that the FBAR claim is timely because the amended complaint related back to the original complaint.  Third, it argues that an automatic transfer at death can constitute a fraudulent transfer or

conveyance, and that these theories do not require that a defendant have received actual distributions of trust assets. Finally, it argues that the Government has stated an unjust enrichment claim.

## STANDARD OF REVIEW

Wiesel's motion is principally brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).

## DISCUSSION

<u>Survivability of Government's FBAR Claim</u>

"Whether a claim survives or is 'extinguished' upon the death of a party is determined by 'the nature of the cause of action for which the suit is brought.'" *U.S. ex rel. Colucci v. Beth Israel Medica. Center* 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009) (quoting *Ex parte Schreiber*, 110 U.S. 76, 80 (1884)). "Absent some specific direction by Congress, whether an action created by federal statutory law survives the death of the plaintiff is a matter of federal common

law." *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996). "In general, under the federal common law, 'a claim survives the party's death if it is "remedial" rather than "punitive."'" *Sharp v. Ally Fin., Inc.,* 328 F. Supp. 3d 81, 88–89 (W.D.N.Y. 2018) (quoting *S.E.C. v. Wyly,* 860 F. Supp. 2d 275, 276 (S.D.N.Y. 2012)).

While the Second Circuit has not directly ruled on the question of whether an FBAR penalty survives the death of a party, it addressed a similar issue in *Estate of Kahr v. Commissioner of Internal Revenue*, an appeal from a Tax Court decision which held that Kahr's estate and wife were not subject to "civil fraud additions" imposed on Kahr after he was determined to have engaged in an elaborate tax fraud scheme. The Second Circuit reversed the Tax Court's decision, stating, among other things:

> It seems impermissible for the estate of a deceased taxpayer, who during his lifetime established a pattern of conduct by which he fraudulently avoided taxes, to avoid a liability that the taxpayer himself could not have avoided if his conduct had been uncovered while he was alive. If Kahr were still living he would be liable for the civil fraud addition. E.g., Jackson v. Commissioner of Internal Revenue, supra. Also, if the tax fraud were committed and a fraudulent return filed before the taxpayer's death but the fraud was not discovered until after his death, liability for a civil fraud addition imposed as a result of the taxpayer's tax evasion activities during his lifetime would survive his death and be borne by his estate. E.g., Estate of Rau v. Commissioner of Internal Revenue, 301 F.2d 51 (9 Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962); Estate of Reimer v. Commissioner of Internal Revenue, 12 T.C. 913 (1949), affirmed per curiam, 180 F.2d 159 (6 Cir. 1950). A purpose of Section 6653(b), like that of its predecessors, e.g., § 293(b) of the 1939 Code, is to protect the tax revenue and to reimburse the Government for the public funds which must be expended in the investigation and uncovering of taxpayer tax evasion activities. E.g., Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). The Government is entitled to this reimbursement whether the taxpayer be alive or dead. See, e.g., Kirk v. Commissioner of Internal Revenue, 179 F.2d 619, 15 A.L.R.2d 1031 (1 Cir. 1950). Death may be an avenue of escape from many of the woes of life, but it is no escape from taxes.

*Kahr v. Comm'r*, 414 F.2d 621, 626 (2d Cir. 1969).

*Kahr* has been cited by some of the few courts that have expressly addressed the question of whether the FBAR penalty survives the death of a party, all of which have held that the FBAR

8

penalty is remedial.  *See, e.g.*, *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1375–76 (M.D. Fla. 2018); *United States v. Park,* 389 F. Supp. 3d 561, 575 (N.D. Ill. 2019).  In *Schoenfeld*, a taxpayer failed to file an FBAR for the calendar year 2008 and was assessed an FBAR penalty before his death.  In holding that the FBAR penalty survived the taxpayer's death, the court applied the framework set forth in *Hudson v. United States*, 522 U.S. 93 (1997), first determining whether Congress "expressed a preference for labeling the penalizing mechanism as civil or penal," and then applying the seven factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), to determine whether the statutory scheme was "so punitive either in purpose or effect" so as to "transform what was clearly intended as a civil remedy into a criminal penalty."  *Schoenfeld*, 344 F. Supp. 3d at 1370.  The *Schoenfeld* Court first found that Congress expressed a preference for labeling the FBAR penalty as civil.  *Id.*  It then considered the relevant *Kennedy* factors, such as whether the sanction (a) has historically been regarded as a punishment and (b) is excessive in relation to the alternative purpose assigned, and determined that these weighed in favor of finding the FBAR penalty claim "remedial."  *Id.* at 1371–73.  The court concluded that the FBAR penalty survived Schoenfeld's death.  Citing to *Kahr* and other cases, the court noted that it was joining "many others which have found that a tax penalty survives." *Id.* at 1375–76.

*United States v. Park,* 389 F. Supp. 3d 561, 575 (N.D. Ill. 2019), also relied on *Kahr* in holding that an FBAR claim was remedial and survived a taxpayer's death.  The *Park* court quoted *Kahr* in holding that "the estate of a taxpayer who fraudulently concealed a portion of his income during his lifetime, but died before he personally filed a fraudulent return, cannot thereby 'avoid a liability the taxpayer himself could not have avoided if his conduct had been uncovered while he was alive.'"  *Id.* at 575 (quoting *Kahr*, 414 F.2d at 626).  *Park* relied on *Schoenfeld* for

9

the proposition that actions to recover tax penalties are remedial because the purpose of such penalties is to reimburse the government for the heavy cost of investigating violations of its tax laws. *Id.* (citing *Schoenfeld,* 433 F. Supp. 3d at 1371).

Wiesel argues that neither *Schoenfeld* nor *Park* should have any persuasive authority in this court because they apply the wrong standard of law. Wiesel asserts that in determining whether an FBAR penalty is "remedial" or "penal," the Court should apply a three-factor test which has been used by the Fifth, Sixth, and Eleventh Circuits in in determining whether a statute is penal or remedial. This test – first enunciated in *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977) – considers: "'(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *NEC Corp.*, 11 F.3d at 137 (quoting *Matter of Wood*, 643 F.2d 188, 191 (5th Cir. 1980)). While Wiesel concedes that no cases addressing an FBAR penalty have applied the three-factor test, she argues that its application in other federal claims can be useful in this case and would show that the FBAR claim is "penal."

This argument has been expressly rejected in *United States v. Green*, No. 19-CV-24026 (KMM), 2020 WL 1980859, at *4 (S.D. Fla. Apr. 27, 2020), another district court case which held the FBAR penalty to be "remedial." *Green* noted that because the three factors "draw distinctions between whether the wrongs were to an individual or the public and whether the recovery runs to an individual or the public," they "do not allow for a situation where the United States itself has suffered a harm because of a defendant's conduct." *United States v. Green*, 2020 WL 1980859, at *4 (citing *NEC Corp.*, 11 F.3d at 137). The *Green* court concluded that the three factors "are not on point here because it is the Government itself that has been harmed."

*Id.* After examining the "relevant considerations which are embodied in both [the *NEC Corp.* and *Hudson*] analyses," *Green* determined that the FBAR penalty is "primarily remedial with incidental penal effects," and survived the taxpayer's death. This Court is persuaded by the reasoning of *Green*, and sides with the predominant consensus that the FBAR penalty claim is remedial.

Timeliness of Government's FBAR Claim

Wiesel also seeks to dismiss the Government's first cause of action as untimely. Under 31 U.S.C. § 5321(b)(2), an FBAR penalty claim must be filed within two years of the date the penalty was assessed. Wiesel concedes that the original complaint in this action was filed on May 12, 2017, three days in advance of the two-year deadline. However, Wiesel contends that the FAC does not relate back to the time when the original complaint was filed because Wolin did not receive notice or have knowledge of this action until late October 2017, long after the period provided by Rule 4(m) for serving the summons and complaint had expired.

The issue of whether the FAC relates back to the original complaint and is therefore timely is governed by Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides, in pertinent part:

> (1) An Amendment to a pleading relates back to the date of the original pleading when: …
>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied, and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

11

With respect to Rule 15(c)(1)(C), the 1991 Advisory Committee notes state: "In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by this court pursuant to that rule." 1991 Adv. Comm. Notes to Fed. R. Civ. P. 15(c). Since the deadline for service under Rule 4(m) was subsequently changed from 120 days to 90 days pursuant to amendments to the Federal Rules of Civil Procedure, *see Turner v. Procopio*, No. 13-CV-693 (FPG), 2020 WL 2219503, at *1 n.3 (W.D.N.Y. May 7, 2020), it is now the rule that "the notice required under the rule … is linked to the federal service period of 90 days *or any additional time resulting from a court-ordered extension*." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1498.1 (3d ed. 2010).

In arguing that the 90-day period should not be extended, Wiesel relies on *Lin v. Joedy*, 214 F. Supp. 3d 207 (W.D.N.Y. 2016). However, *Lin* merely noted that the plaintiff in that case "had not cited any case law supporting his theory" that the 90-day time period for notice under Rule 15(c)(1)(C) could be extended and "question[ed] whether Rule 15(c)(1)(C) should be interpreted in such a manner." *Lin*, 214 F. Supp. 3d at 215. In contrast, the United States has cited numerous cases, along with the 1991 Advisory Committee Notes to Rule 15(c), to support its contention that the 90-day Rule 4(m) period can be extended. *See Patrick v. Garlick,* 66 F. Supp. 3d 325, 330–31 (W.D.N.Y. 2014) ("an extension [of the 90-day period under Rule 4(m)] is appropriate since it would foster the well-settled preference in the Second Circuit for deciding cases on their merits."); *see also Johnson-Krumm v. City of Seaford*, 2019 WL 2067143 at *3 (D. Del. May 10, 2019) ("It is undisputed that, for purposes of Rule 15(c)(1)(C)(i), the 'time period provided by Rule 4(m)' includes any court-ordered extension of the time for service.") In light

of these authorities, the Court holds that Wolin received notice of this lawsuit within the time period provided by Rule 4(m).

In addition, the Court notes that in the original complaint and FAC, the United States was not suing Wiesel or Wolin in their personal capacities. Rather, the real party in interest was the estate, which could only be sued through an executor or fiduciary. The estate had at least constructive notice when Wiesel, who was named as executrix in Ziegel's will, was served with the original complaint. The Government could not have sued Wolin within 90 days of the commencement of this action because she was not appointed a fiduciary of the estate until January 2, 2018.

<u>Fraudulent Transfer and Conveyance</u>

In seeking to dismiss plaintiff's second and third causes of action, Wiesel argues that "the mere death of a person" cannot by itself constitute a "fraudulent transfer" or "fraudulent conveyance" without some action on the part of the purported conveyor or the purported recipients. (Defendant's Memo at 14–15.) The United States' second cause of action alleges a "fraudulent transfer" under 28 U.S.C. § 3304. Subsection (a)(1) provides:

> (a) **Debt Arising Before Transfer.** Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—
>
>> (1) (A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>>
>> (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation…

Some of the key terms used in this subsection are defined in 28 U.S.C. § 3301. Notably, subsection (6) of this statute states:

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Thus, the term "transfer" in 28 U.S.C. § 3304(a) encompasses "every mode" of parting with an asset or an interest in an asset, including modes which are conditional and involuntary.

Ziegel's interests in Assadah and the Account were involuntarily transferred to the Daughters, as contingent co-beneficiaries, upon Ziegel's death. This transfer of the assets fits squarely within § 3301(6)'s broad definition of transfer.

Wiesel relies on *North Carolina Department of Revenue v. The Kimberley Rice Kaestner 1992 Family Trust*, 139 S.Ct. 2213 (2019), in support of her position that a volitional act to distribute the assets is necessary for a fraudulent transfer. In that case, the Supreme Court held that "the presence of in-state beneficiaries alone does not empower a State to tax trust income that has not been distributed to the beneficiaries where the beneficiaries have no right to demand income and are uncertain to ever receive it." 139 S.Ct. at 2221. However, the Supreme Court expressly limited this holding to the specific facts presented, where the beneficiaries "had no right to demand income and were uncertain to receive it." *Id.* This has no implications for the entirely distinguishable question of whether the Government, in attempting to collect an FBAR penalty, should be able to reach Ziegel's interest in assets that automatically transferred to the Daughters at the time of his death. Wiesel does not present any evidence suggesting that she and Greenberg "have no right to demand income and are uncertain of ever receiving it," and thus *North Carolina Department of Revenue* does not apply.

The United States' third cause of action alleges a "fraudulent conveyance" under New York Debtor and Creditor Law Section 273, which states:

14

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.[1]

Despite Wiesel's insistence that fraudulent conveyance requires "action" on the part of the conveyor or recipients to distribute the assets, New York law is clear that both fraudulent transfer and fraudulent conveyance can occur upon death.  In the *Matter of Granwell*, 20 N.Y.2d 91 (1967), the New York Court of Appeals held that if a decedent has an interest in property which, at his demise, is gratuitously transferred to another person leaving his estate "insolvent," the transfer would be "fraudulent…without regard to his actual intent."  20 N.Y.2d at 97 (citing New York Debtor and Creditor Law, § 273).  Similarly, *Gallagher v. Kirschner*, 632 N.Y.S. 2d 857 (N.Y. App. Div. 1995), held that where the transfer of a decedent's interest in a joint tenancy occurs by operation of law upon his death, "a creditor may recover the interest transferred as a fraudulent transfer" if the transfer rendered the estate insolvent.  *Id.* at 858.  Wiesel does not provide any case law to counter these authorities.

Finally, Wiesel argues that beneficiaries cannot be held liable for money damages greater than the amount wrongfully received.  She cites to two cases – *Sullivan v. Kodsi,* 373 F. Supp. 2d 302 (S.D.N.Y. 2005), and *Official Committee of Unsecured Creditors of Exeter Holding, LTD. v. Haltman,* 13-CV-5475 (JS)(AKT), 2018 WL 1582293 (E.D.N.Y. Mar. 30, 2018) – which

---

[1] Plaintiff's "fraudulent conveyance" claim is also brought under New York Debtor and Creditor Law Section 278, which states:

> (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>    (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>    (b) Disregard the conveyance and attach or levy execution upon the property conveyed.
> (2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

15

dismissed claims against beneficiaries of a trust to which assets were conveyed. However, those cases involved the transfer of assets into a trust and the decisions were based on the fact that the trustees of the trust, not the beneficiaries, controlled the assets. In contrast, Ziegel's interest in the Account was directly transferred to the Daughters themselves upon his death.

For these reasons, the Court rejects Wiesel's contention that the SAC fails to state a plausible claim for fraudulent transfer or conveyance under federal and state-law. Accordingly, her motions to dismiss the Government's second and third causes of action are denied.[2]

### Unjust Enrichment

Wiesel also seeks to dismiss the United States' fourth cause of action, which alleges "unjust enrichment." "The elements of a cause of action to recover for unjust enrichment are '(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *Jetro Holdings, LLC v. MasterCard Int'l, Inc.*, 166 A.D.3d 594, 598 (N.Y. App. Div. 2018) (quoting *Travelsavers Enters., Inc. v Analog Analytics, Inc.*, 149 A.D.3d 1003, 1006 (N.Y. App. Div. 2017)).

Wiesel argues that the claim for unjust enrichment is not facially "plausible" because there is no allegation that she "received any distribution" from Assadah. However, Wiesel does not cite to any authority for the proposition that a plaintiff must allege monetary distributions to establish unjust enrichment. To the contrary,

> The essence of a claim for unjust enrichment is that one party has parted with money *or a benefit* that has been received by another at the expense of the first

---

[2] The Government alleges that the Assadah foundation document expressly permits the Daughters to receive up to $50,000 annually from the trust in the first five years following Ziegel's death, and after five years the remainder of the assets are divided equally. The Government offers to amend the SAC to include these allegations. Since the Court has already denied Wiesel's motion to dismiss the second and third causes of action, the Court need not consider whether to grant leave to amend the SAC. The facts regarding what distributions may be demanded by the Daughters may, however, be revisited upon a motion for summary judgment.

party. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received *something of value* which belongs to the plaintiff." 22A N.Y. Jur.2d. Contracts § 515; *see also McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328 (N.Y.1977); *Stone v. Solarbrite, Inc.*, 128 A.D.2d 696, 512 N.Y.S.2d 784, 784–85 (N.Y. App. Div. 1987).

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp 2d 1, 4 (S.D.N.Y. 2004) (emphasis added).

In this case, the United States alleges that Wiesel and Greenberg did receive "something of value" – Ziegel's beneficial interest in the Assadah trust. This interest came "at the expense of" the United States given Ziegel's failure to comply with the FBAR requirement and pay the subsequent penalties. Given that "the essence of unjust enrichment is that one party has received money or a benefit at the expense of another," it would be inequitable – assuming the allegations in the complaint are true – to permit Wiesel to retain the assets sought by the United States. *See County of Nassau v. Expedia, Inc.*, 120 A.D.2d 1178, 1180 (N.Y. App. Div. 2014) (citing *Goldman v. Simon Prop. Group, Inc.*, 58 A.D.3d 208, 220 (N.Y. App. Div. 2008). Hence, the United States has stated a claim for unjust enrichment.

## CONCLUSION

For the reasons set forth above, Wiesel's motion to dismiss is denied. This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
      September 28, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge