```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES,

                     Plaintiff,              MEMORANDUM AND ORDER

    -against-                                 17-cv-02927(KAM)(CLP)

CHAVA WOLIN as Fiduciary of the Estate
of LEO ZIEGEL, CHAVA WOLIN
Individually, ANNETTE WIESEL, and DORIS
GREENBERG,                               X

                     Defendants.
----------------------------------------
```

**KIYO A. MATSUMOTO**, United States District Judge:

Defendant Chava Wolin ("Ms. Wolin") has timely objected to a discovery ruling by Chief Magistrate Judge Cheryl Pollak entered April 1, 2022 (the "Discovery Order"), denying Ms. Wolin's request to compel a renewed deposition of her co-defendant Annette Wiesel ("Ms. Wiesel").  *See* ECF No. 93, Discovery Order; ECF No. 95, Fiduciary Defendant Chava Wolin's Objections to Magistrate Judge Pollak's Memorandum and Order ("Wolin Objection").  The Court has reviewed the Discovery Order and the parties' submissions and finds that the Discovery Order is neither clearly erroneous nor contrary to law.  Accordingly, Ms. Wolin's objection is overruled and denied and Magistrate Judge Pollak's April 1, 2022 Discovery Order is affirmed in its entirety.

1

**Background**

The facts relevant to Ms. Wolin's objections to the Discovery Order are as follows. On May 12, 2017, the United States commenced this action, pursuant to 31 U.S.C. § 3711(g)(4)(C), seeking judgment against the Estate of Leo Ziegel (the "Estate"), for an outstanding penalty of $1,435,235.00 assessed against Mr. Ziegel, pursuant to 31 U.S.C. § 5321(a)(5) (known as an "FBAR penalty"), for his failure to timely report his interest in a foreign financial account.[1] Although the government initially sued Annette Wiesel, one of Mr. Ziegel's daughters, as Executrix of the Estate in its initial Complaint, and Mr. Ziegel's will named Wiesel as Executrix, she declined to serve as Executrix. ECF No. 6, Government Letter dated August 8, 2017. After Ms. Wiesel declined to serve as Executrix, Ms. Wolin, Mr. Ziegel's granddaughter, was appointed fiduciary. *See* ECF No. 35, Defendant's Answer to Second

---

[1] In the government's initial and first amended complaint, the government sought judgment against the Estate for an FBAR penalty in the amount of $1,670,637.00. *See* ECF No. 1, Complaint at 4, ¶ 28; ECF No. 11 at 4, ¶ 28. In its second amended complaint and third amended complaint, the government amended the FBAR penalty amount to $1,435,235.00. *See* ECF No. 31, Second Amended Complaint at 4, ¶ 30; ECF No. 87, Compl.3 at 4, ¶ 30. The government's third amended complaint stated that as of June 27, 2019, the Estate is liable to the government for the FBAR penalty of $1,435,235.00, as well as associated late payment penalties and interest, for a total amount of $1,849,211.83. The Court takes note that statutory accruals continue until the liability is paid in full. *See* ECF No. 87, Compl.3 at 4, ¶30, 8.

Amended Complaint. The government's third amended complaint names Ms. Wiesel, Doris Greenberg, another of Mr. Ziegel's daughters, and Ms. Wolin individually as transferee defendants, and also asserts claims against Ms. Wolin as Fiduciary of the Estate. *See* ECF No. 87, Third Amended Complaint ("Compl.3") at 1, 4-8.

The government alleges that Mr. Ziegel, a resident of Flushing, New York, and a citizen of the United States during the calendar year 2008, did not report any income or losses from a foreign bank account he owned and utilized in Switzerland ("Account"), nor did he disclose the existence of the Account to the Internal Revenue Service ("IRS") on his 2008 tax return, or at any other time. ECF No. 87, Compl.3 ¶¶ 7, 21, 23. The Account was tied to a Lichtenstein foundation named Assadah Stiftung ("Assadah") through a trust agreement signed by Mr. Ziegel as the beneficial owner of Assadah and the Account. ECF No. 87, Compl.3 ¶¶ 14-15, 17-20. The United States alleges that as of June 30, 2009, the balance of the Account was at least $2,870,469. *Id.* ¶ 29. In accordance with 31 U.S.C. § 5321(a)(5)(C)(i), the government assessed a civil penalty against Mr. Ziegel in the amount of $1,435,235.00 due to his willful failure to disclose the Account to the IRS. *Id.* ¶ 30. Late payment penalties and interest are also being sought by the United States. *Id.* ¶ 32-33.

On April 4, 2014, Mr. Ziegel died testate, and on January 2, 2018, the Surrogate's Court, Queens County, appointed Ms. Wolin, granddaughter of Mr. Ziegel, as fiduciary of the Estate of Leo Ziegel. *Id.* ¶¶ 2-3, 40. The Complaint alleges that when he was alive, Mr. Ziegel named his daughters, Ms. Wiesel and Ms. Greenberg, contingent co-beneficiaries the Account and Assadah. *Id.* ¶¶ 38-39, 41. The Complaint further alleges that in February 2010, a one-third share in Assadah and the Account that belonged to Uri (Ziegel) Sharmi, Ms. Wolin's father, was removed at Mr. Ziegel's request, but the share was later reinstated in November 2019. *Id.* ¶ 43. Since Ms. Wolin's father is no longer alive, Ms. Wolin succeeded to the one-third share. *Id.* The government alleges that when Mr. Ziegel died in April 2014, his entire interest in Assadah and the Account was transferred to Ms. Wiesel and Ms. Greenberg in equal shares. *Id.* ¶ 42. As a result of the transfer, the government alleges that the Estate became insolvent and the transfer, which was made without reasonably equivalent value in exchange, was constructively fraudulent as to the United States as a creditor of Mr. Ziegel. *Id.* ¶¶ 44-4. The government alleges claims for fraudulent transfer, fraudulent conveyance, and unjust enrichment against Ms. Wolin, Ms. Wiesel, and Ms. Greenberg, individually, and it seeks judgment for the civil penalty owed by

4

the Estate and names Ms. Wolin as Fiduciary of the Estate. *Id.* ¶¶ 34, 47, 52, 55-57.

Ms. Wolin has brought litigation in New York Surrogate's Court, Queens County, on behalf of the Estate against Ms. Wiesel in two separate petitions (the "State Petitions"). ECF No. 90, Wiesel Response at 2. Ms. Wolin alleges in the State Petitions, as she does here, that every transaction conducted by Mr. Ziegel from May 2009 through the end of his life in April 2014 "should be nullified due to a lack of capacity." *Id.* Ms. Wolin claims that crucial to this defense is Ms. Wiesel's testimony of her involvement in and awareness of Mr. Ziegel's financial affairs and cognitive health during the relevant time. *Id.* at 3.

In the instant dispute, Ms. Wolin moved for an order compelling Ms. Wiesel to appear for a renewed deposition in this action, asserting that because a signature page signed by Ms. Wiesel in 2012 and attached to a 2005 document, titled "Durable General Power of Attorney Effective At a Future Time," was not produced until November 2018, after Ms. Wiesel's deposition in August 2018, Ms. Wiesel's deposition testimony in 2018 was false and misleading. ECF No. 89, Wolin Motion at 1. Ms. Wolin argues that, as a result, the parties were unable to adequately question Ms. Wiesel about whether Mr. Ziegel was cognitively impaired to such an extent that he could not willfully file an FBAR for the

5

tax year 2008.  *Id.* at 2.  Ms. Wolin asserts that a missing signature page in the foregoing document, which Ms. Wiesel signed in 2012 as Mr. Ziegel's attorney-in-fact, contradicts Ms. Wiesel's 2018 deposition testimony that she "did not think" she had ever served as Ziegel's attorney-in-fact and "did not think" a physician had certified him as suffering from diminished capacity.  *Id.*

Based on the foregoing signature page signed in 2012 by Mrs. Wiesel, Ms. Wolin contends that her inability to question Ms. Wiesel after production of this document will prevent her counsel from gathering more information from Ms. Wiesel about the Assadah Foundation and Mr. Ziegel's health and cognitive functioning, specifically in 2008 and 2009 when Mr. Ziegel failed to file the FBAR.  *Id.* at 3.  Aside from Ms. Wiesel's 2012 signature, Ms. Wolin also references other facts her counsel has discovered since Ms. Wiesel's 2018 deposition testimony, such as Mr. Ziegel's need for home health care, his medications, visits to the emergency room, and to a geriatrician.  *Id.* at 3-4.  Ms. Wolin cites this new information as evidence of Ms. Wiesel's decision to deliberately withhold the 2012 signature page, all in an effort to avoid disclosure regarding Mr. Ziegel's health.  *Id.*  Ms. Wolin highlights that, indeed, numerous documents and information from other deposition testimonies of Mr. Ziegel's doctors and

6

accountants have emerged since 2018, and Ms. Wiesel should be questioned about this new discovery. *Id.*

In her opposition, Ms. Wiesel argues that she has already been deposed four (4) times: on July 5, 2018 in Surrogate's Court; on August 8, 2018 in this action; on September 12, 2018 in Surrogate's Court; and on February 27, 2020 in a pending State Petition proceeding. *See* ECF. 90, Wiesel Response at 3. Ms. Wiesel also asserts that she was scheduled to be deposed on December 21, 2021 by Ms. Wolin in a State Petition proceeding, but Ms. Wolin declined to proceed with the deposition, waiving her right to do so. *Id.* Ms. Wiesel characterized the instant request to depose her again as "abusive" and not based on any current deficiency in Ms. Wiesel's document production. *Id.* at 1.

Ms. Wiesel asserts that she did not possess her 2012 signature page upon which Ms. Wolin relies, and thus, could not and did not produce it, and further asserts that the document has no bearing on Mr. Ziegel's failure to file an FBAR for 2008 by June 30, 2009, or his competence or lack thereof in 2009. *Id.* at 2-3. According to Ms. Wiesel, she did not have the signature page, "likely because the signature page was sent directly to Mr. [Richard] Levine for use in dealing with the IRS on behalf of Mr. Ziegel." *Id.* at 2. It was Mr. Levine who produced Ms. Wiesel's 2012 signature page by including it in the foregoing 2005 document

7

in his November 2018 production. *Id.* at 3. Ms. Wiesel stated that though she did not have the 2012 signature page in her July 2018 production, she produced another document dated July 13, 2011, in which Mr. Ziegel also executed a power of attorney, appointing other representatives to appear on his behalf with the IRS. *Id.*

On April 1, 2022, Magistrate Judge Pollak denied Wolin's motion to compel Ms. Wiesel to appear for a renewed deposition. *See* ECF No. 93, Discovery Order. Magistrate Judge Pollak noted that Ms. Wolin had sufficient documentation and opportunity during Ms. Wiesel's 2018 deposition to investigate Ms. Wiesel's knowledge of her father's cognitive and physical health. *Id.* at 6-7. Magistrate Judge Pollak was not convinced that Ms. Wolin had new information that justified a renewed deposition of Ms. Wiesel. *Id.* On April 12, 2022, Ms. Wolin appealed Magistrate Judge Pollak's Discovery Order, arguing that the denial of an order to compel Ms. Wiesel to a submit to renewed deposition in this matter was clearly erroneous and contrary to Federal Rule of Civil Procedure Rule 26(b)(2)(C). *See* ECF No. 95, Wolin Objection at 1, 5-10. Ms. Wolin's primary objection is that her counsel was not able to depose Ms. Wiesel about the central issue of Mr. Ziegel's cognitive impairment due to the nature of Ms. Wiesel's responses in 2018, which Ms. Wolin characterizes as false and misleading. *Id.* at 5. Ms. Wolin asserts that the documents that have emerged

8

since Ms. Wiesel's 2018 deposition now provide counsel an opportunity to discuss Mr. Ziegel's declining health. *Id.* at 4-5, 7.

Upon a full review of the record, this Court disagrees with Ms. Wolin's contention that Judge Pollak's denial of a renewed deposition is clearly erroneous and contrary to law. Instead, the Court finds that Magistrate Judge Pollak's thorough and well-reasoned Discovery Order denying Ms. Wolin's renewed deposition of Ms. Wiesel has correctly considered and applied the facts and law.

## DISCUSSION

### I. Standard of Review

A district court may set aside a magistrate judge's order concerning non-dispositive matters only if the order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous if the reviewing court, based on all the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). A

9

magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "'nondispositive' of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court).

"Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Dunkin' Donuts Franchised Rests., LLC v. 1700 Church Ave. Corp.*, No. 07-CV-2446, 2009 U.S. Dist. LEXIS 24367, at *3 (E.D.N.Y. Mar. 24, 2009) (citation and internal quotation marks omitted). Thus, "a party seeking to overturn a discovery ruling [by a magistrate judge] generally bears a heavy burden." *Travel Sentry, Inc. v. Trop*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (citation and internal quotation marks omitted).

**II. Application**

    **A. The Order is Not Clearly Erroneous**

Ms. Wolin objects to Magistrate Judge Pollak's Discovery Order arguing that the Discovery Order is clearly erroneous because

10

it precludes Ms. Wolin from obtaining discovery on the central issue of Ms. Wolin's defense. ECF No. 95, Wolin's Objection at 5. In support, Ms. Wolin notes that the Discovery Order "mistakenly found" that the issue of Mr. Ziegel's health and cognitive functioning was addressed at Ms. Wiesel's deposition in 2018, when it was not, because Ms. Wiesel testified that Mr. Ziegel's the "health was *not* an issue." *Id.* at 6. Ms. Wolin states that her counsel should be able to seek information in a renewed deposition of Ms. Wiesel about new documents that were provided by Ms. Wiesel, because they are relevant to the healthcare that Mr. Ziegel received around the time he was required to make the 2008 FBAR filing. *Id.*

This Court disagrees that the Order was clearly erroneous. By citing to Ms. Wiesel's deposition responses about her father's health, Ms. Wolin concedes that Mr. Ziegel's health and cognitive functioning were addressed in Ms. Wiesel's deposition in 2018. *Id.* at 3-5; *see also Marathon Ashland Petroleum LLC v. Equili Co., L.P.,* No. 00CIV.2935(RMB)(KNF), 2004 WL 992196, at *4 (S.D.N.Y. May 5, 2004) (denying a deposition request where movant lacked new information to question a witness and had other opportunities to pursue discovery on an issue); *City of Almaty, Kazakhstan v. Ablyazov,* No. 15 CV 05345, 2019 WL 4126445, at *7 (S.D.N.Y. Aug. 30, 2019) (declining to reopen

11

depositions on newly disclosed documents where parties had "already testified" about the transactions). In the transcript of Ms. Wiesel's 2018 deposition provided to the Court by Ms. Wiesel's counsel, counsel for the parties examined Ms. Wiesel about Mr. Ziegel's health, specifically referencing evidence of Mr. Ziegel's declining health. *See* ECF No. 90-1, Wiesel Response's Exhibit at 4-7. Though Ms. Wolin notes that the government led most of the 2018 deposition, the excerpted transcript includes inquiry into Ms. Wiesel's role as Mr. Ziegel's attorney-in-fact. *Id.* Ms. Wolin's counsel had an opportunity during Mrs. Wiesel's deposition and in subsequent depositions to address the same issues Ms. Wolin again seeks to address in a renewed deposition. *See Chang v. Safe Horizons*, No. 03 CIV.10100 WHP RLE, 2004 WL 1874965, at *1 (S.D.N.Y. Aug. 20, 2004) (denying a request to reopen deposition because movant had "ample time to depose" the party and "the defendant's answers [not being] responsive and pertinent to [sic] questions" was not a compelling enough reason to reopen). This Court also notes that in 2021, Ms. Wolin waived her opportunity to depose Ms. Wiesel in the State Petitions proceedings after she obtained new documents. ECF No. 90, Wiesel Response at 3.

Furthermore, despite Ms. Wolin's dissatisfaction with the alleged inadequacy of Ms. Wiesel's responses, including her frequent inability to recollect, this Court finds that Ms. Wolin

12

was not then and is not now precluded from obtaining discovery elsewhere on the central issue of her defense. Ms. Wolin references that since Ms. Wiesel's 2018 deposition, "new information integral to Defendant's defense" was gathered "from numerous documents, including Genworth's assessments, the home care agency records, and the records of Leo Ziegel's doctors from appointments." ECF No. 95, Wolin Objection at 8. The various means by which the new information was obtained by Ms. Wolin demonstrate that Ms. Wolin already has information relevant to Ms. Wolin's defense without deposing Ms. Wiesel again. This Court agrees with Magistrate Judge Pollak's correct finding that the "mere fact" that a party "was provided additional documents containing further detail regarding a factual area previously known to and addressed (to a limited extent) by [the party] during the original depositions is not tantamount to receiv[]ing new information" to justify reopening the deposition. *Thompson v. Spota*, No. 14 CV 2473, 2017 WL 1155799, at *4 (E.D.N.Y. Mar. 27, 2017); *see also Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV135475JSAKT, 2016 WL 1180194, at *4 (E.D.N.Y. Mar. 25, 2016) (stating that requests to reopen a deposition cannot be an "en masse request" or a "fishing expedition" but should be "based upon and limited to particular documents or evidence"). There is no guaranteed right to conduct

13

depositions based on the emergence of new information, especially when there may be no new information to be gained by the deposition itself.

Though the timing of the production of documents and Ms. Wiesel's deposition may not have been ideal, this Court does not find Magistrate Judge Pollak's denial of a renewed deposition to be "clearly erroneous" and does not agree that a "mistake has been committed."

### B. The Order is Not Contrary to Law and Correctly Applies Rule 26(b)(2)(C)

Ms. Wolin further objects to Magistrate Judge Pollak's Order, arguing that the judge misapplied Rule 26 (b)(2)(C) and that all the factors weigh in favor of requiring Ms. Wiesel to submit to a renewed deposition. Ms. Wolin argues that contrary to Magistrate Judge Pollak's assessment, a renewed deposition of Ms. Wiesel would not be unnecessarily cumulative, that Ms. Wolin would not be able to obtain the same information from another witness, and the benefit of Ms. Wiesel's testimony to Ms. Wolin's defense outweighs the burden of a renewed deposition. This Court disagrees with Ms. Wolin's contention that Magistrate Judge Pollak misapplied Rule 26(b)(2)(C).

The Court acknowledges that the scope of discovery under Federal Rule of Civil Procedure 26(b) is very broad, encompassing

"any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Nevertheless, discovery is not unrestricted, and the court must limit discovery where it is "unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive," "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

Ms. Wolin requests a second deposition of Ms. Wiesel, stating that it would not be "unnecessarily cumulative" because this time, counsel can specifically focus on Mr. Ziegel, "his need for around-the-clock care in his home starting in May 2009, and his inability to handle his financial affairs during that time." ECF No. 95, Wolin Objection at 8- 9. In her request for a renewed deposition, Ms. Wolin recounts various portions of Ms. Wiesel's 2018 deposition that purportedly demonstrate Ms. Wiesel had omitted important information, "[d]espite being asked multiple questions about Leo Ziegel's health in his last years, including about whether there had been any changes in Mr. Ziegel's health

15

during that period [around 2008]." ECF No. 89, Wolin Motion at 3. It is clear from the record before the Court that the very areas of inquiry that Ms. Wolin hopes to ask at a renewed deposition of Ms. Wiesel, have already been explored. *Id.* Given that the stated scope of the renewed deposition appears to be duplicative of previous inquiries, the Court is persuaded that after four prior depositions of Ms. Wiesel, and one declination by Ms. Wolin of another, that a fifth deposition would be unnecessarily cumulative and burdensome. *Id.*; ECF No. 90, Wiesel Response at 3.; *Thompson v. Spota*, WL 1155799, at *4 (denying a renewed deposition because the existing deposition excerpts made clear that the movant had opportunities to "fully develop[] the inquiry" to obtain the relevant information); *see also Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329 LDW AKT, 2015 WL 4257329, at *6 (E.D.N.Y. July 14, 2015) (finding a renewed deposition to be "unnecessarily cumulative" because counsel had opportunity to examine with follow-up questions in other depositions).

Furthermore, though Ms. Wolin asserts that she does not have access to other vital fact witnesses, Ms. Wolin has identified a number of various witnesses with knowledge of Mr. Ziegel's cognitive and physical state around 2008-2009, including Dr. Siskind, two accountants that Mr. Ziegel had appointed in 2011 with powers of attorney, the healthcare professionals who started

16

providing "around-the-clock" care for Mr. Ziegel, Erin Kindler, who was described in Ms. Wiesel's 2018 deposition as someone who had power of attorney for Mr. Ziegel around 2011, and Mr. Ziegel's "doctors and accountants who were deposed in 2019 and 2021." ECF No. 89, Wolin Motion at 5; ECF No. 90, Wiesel Response at 3; ECF No. 90-1, Wiesel Response's Exhibit at 2; ECF No. 95, Wolin Objection at 8-9.

Lastly, given that Ms. Wiesel frequently responded that she could not recall certain events, this Court finds that any potential benefit that Ms. Wolin hopes to gain by deposing Ms. Wiesel again is outweighed by the burden and expense of re-deposing Ms. Wiesel. It is clear from the transcript that Ms. Wiesel repeatedly asserted in her 2018 deposition that she does not remember details of her father's care or physical or cognitive state over the years. ECF No. 90-1, Wiesel Response's Exhibit at 4-5, 7, 12-13. Even when questioned with direct excerpts from documents, such as Dr. Siskind's medical note, Ms. Wiesel could not provide new information or any recollection of events. *Id.* at 4. Ms. Wolin has alleged that Ms. Wiesel has not been forthcoming in her deposition, but the Court is not convinced that a renewed deposition of Ms. Wiesel would yield different testimony.

The Court has no reason at this time to discredit the representations made by Ms. Wiesel. Another deposition in which

17

Ms. Wolin's counsel would pose questions that could have been posed earlier will be duplicative, burdensome, overly broad and intrusive, and will cause the needless expenditure of time and funds which Ms. Wolin is not willing to incur. *See* Fed. R. Civ. P. 26(b)(2)(C). Moreover, to the extent that Ms. Wolin merely seeks confirmation from Ms. Wiesel that her father was indeed impaired during the 2008 FBAR filings, there are other less burdensome and less expensive means to obtain such information, such as the existing health records and other witnesses. *See id.* If the purpose of a renewed deposition of Ms. Wiesel is simply to attack the consistency or truthfulness of Ms. Wiesel, this Court agrees with Magistrate Judge Pollak's correct observation that a trial would be a more appropriate means to do so. Accordingly, the Court finds that Magistrate Judge Pollak's Discovery Order denying Ms. Wolin's motion to conduct another deposition of Ms. Wiesel is not clearly erroneous or contrary to law and affirms Magistrate Judge Pollak's denial of Ms. Wiesel's renewed deposition.

## **CONCLUSION**

For the reasons stated above, Ms. Wolin's objections to Magistrate Judge Pollak's April 1, 2022 Discovery Order are overruled and denied in their entirety, and the Discovery Order is affirmed in its entirety.

**SO ORDERED.**

Dated: May 20, 2022
Brooklyn, New York

　　　　　　　　　　　　　　　　　　/s/ Kiyo Matsumoto
　　　　　　　　　　　　　　　　**Kiyo A. Matsumoto**
　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　Eastern District of New York