UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA,

                          Plaintiff,

     -against-                                    **MEMORANDUM AND ORDER**
                                                  17-CV-2927 (KAM)(CLP)

CHAVA WOLIN, as fiduciary of the estate
of LEO ZIEGEL, ANNETTE WIESEL, and
DORIS GREENBEG,

                          Defendants.
--------------------------------------X


**MATSUMOTO, United States District Judge:**

     Plaintiff United States of America, with the authorization
of the Secretary of the Treasury and at the direction of the
Attorney General of the United States of America ("Plaintiff" or
"USA") commenced this action on May 12, 2017 against Chava Wolin
("Wolin") as fiduciary of the Estate of Leo Ziegel ("Ziegel"),
Annette Wiesel ("Wiesel"), and Doris Greenberg ("Greenberg" and,
together with Wiesel and Wolin, "Defendants") seeking to collect
an outstanding civil monetary penalty assessed against Ziegel,
pursuant to 31 U.S. § 5321(a)(5) as well as a late-payment
penalty, pursuant to 31 U.S.C. § 3717(c)(2) and 31 C.F.R. §
5.5(a), in the amount of $1,849,211.83 plus applicable interest
and accruals (the "FBAR Penalty"). *See generally* (ECF Nos. 1,
Complaint, "Compl."; 11, Amended Complaint, "AC"; 31, Second

1

Amended Complaint, "SAC"; 87, Third Amended Complaint, "TAC"; and 121, Fourth Amended Complaint, "FAC".)

Before this Court is Defendant Greenberg's motion to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that Plaintiff failed to allege sufficient facts to demonstrate that Defendant Greenberg is subject to this Court's personal jurisdiction.  (ECF Nos. 130-4, "Def. Mot."; 132, "Def. Reply".)  Plaintiff opposes Defendant Greenberg's motion to dismiss.  (ECF No. 131-15, "Ptf. Opp.")  For the reasons set forth below, Defendant's motion to dismiss the Fourth Amended Complaint is **DENIED**.

<u>**BACKGROUND**</u>

**I.   Factual Background**

Leo Ziegel was a United States citizen who passed away in Queens, New York on April 4, 2014.  (FAC ¶¶ 2, 23.)  Ziegel is survived by two daughters, Annette Wiesel and Doris Greenberg.  (FAC ¶¶ 38-39.)  Ziegel is also survived by a granddaughter, Chava Wolin, who was named as fiduciary to Ziegel's estate by a Queens County Surrogate Court on January 2, 2018.  (FAC ¶¶ 3, 40.)

**A. The Assadah Account**

Prior to his death, Ziegel established a Lichtenstein foundation referred to as Assadah Stiftung (the "Assadah Foundation") and a Union Bank of Switzerland ("UBS") bank

account (the "UBS Account"). (FAC ¶¶ 11-14.) On October 31,
1983, Ziegel created a trust agreement between the Assadah
Foundation and UBS ("the Assadah Trust"), which was connected to
the UBS Account. (FAC ¶ 15.) Between 2002 and 2009, Ziegel is
alleged to have utilized funds from the UBS Account, earned
interest and dividend proceeds from the UBS Account, held
discussions with multiple UBS employees regarding investments
and withdrawals of assets in the UBS Account, and was identified
as the beneficial owner of both the UBS Account and the Assadah
Trust. (FAC ¶¶ 17-20.)

Nevertheless, Ziegel failed to report any income or loss
from the Assadah Trust and UBS Account to the United States
Internal Revenue Service ("IRS"), including in Ziegel's 2008
Federal Income Tax Return, as required by 31 U.S.C. § 5314 and
31 C.F.R. § 103.27(c).[1] (FAC ¶ 21-22, 28.) Plaintiff alleges
that Ziegel's failure to file an FBAR was willful, including
because Ziegel signed his 2008 Federal Income Tax return under
penalty of perjury. (FAC ¶ 22, 24-28.) Plaintiff further
alleges that as of June 20, 2009, the balance of the UBS Account
was $2,870,469.00. (FAC ¶ 29.)

---

[1] The IRS report required by 31 U.S.C. § 5314 is referred to as the Report of
Foreign Bank and Financial Accounts ("FBAR"). 31 C.F.R. § 103.27(c) dictates
that "[r]eports required to be filed by § 103.24 shall be filed with the
Commissioner of Internal Revenue on or before June 30 of each calendar year
with respect to foreign financial accounts exceeding $10,000 maintained
during the previous calendar year."

**B. Ziegel's Death and Insolvency**

Upon Ziegel's death in Queens, New York on April 4, 2014, his interest in the Assadah Trust transferred to his daughters and co-beneficiaries, Wiesel and Greenberg, in equal shares. (FAC ¶¶ 41-42.)

On or about November 2019, a one-third share of the interest in the Assadah Trust was transferred to Uri Shamir, the father of Ziegel's granddaughter, Chavan Wolin (the "2019 Transfer"). (FAC ¶ 43.) Upon Shamir's death, Shamir's one-third interest in the Assadah Trust transferred to his daughter and Ziegel's granddaughter, Wolin. (*Id.*) As a result of the 2019 Transfer, Ziegel's prior interest in the Assadah Trust was divided in equal thirds among Wiesel, Greenberg, and Wolin. (FAC ¶ 46.)

According to Plaintiff, the transfer of Ziegel's interest in the Assadah Trust and UBS Account, which was triggered by Ziegel's death in New York, rendered Ziegel's estate insolvent. (FAC ¶ 46.) This transfer, as well as the 2019 Transfer, is alleged to have been effectuated without a reasonably equivalent value offered in exchange. (FAC ¶ 44.)

**C. IRS Civil Penalty**

On May 15, 2015, approximately one year after Ziegel's death, a delegate of the Secretary of the United States Treasury sent notice of the IRS's assessment of a civil monetary penalty

4

and a demand for payment to Ziegel in connection with Ziegel's
failure to file an FBAR with respect to the Assadah Trust and
UBS Account in the 2008 calendar year.  (FAC ¶ 30-31.)

Plaintiff alleges that Ziegel was liable for a civil
monetary penalty in the amount of $1,435,235.00 because of
Ziegel's willful failure to disclose the Assadah Trust and UBS
Account to the IRS pursuant to 31 U.S.C. § 5321(a)(5)(C)(i) as
well as a late-payment penalty in the amount of $354,837.28 and
interest in the amount of $59,139.55.  (FAC ¶¶ 30-32.)  In
total, the USA alleges that the estate of Ziegel is liable for
$1,849,211.83.  (FAC ¶ 34.)

Plaintiff asserts that because its claim against Ziegel and
his estate arises out of Ziegel's failure to make the required
FBAR filing in connection with his 2008 federal income tax
return in violation of 31 U.S.C. § 5314(a), the transfer of
Ziegel's interest in the Assadah Trust and UBS Account to Weisel
and Greenberg, which rendered Ziegel's estate insolvent, and the
follow up 2019 Transfer, are both constructively fraudulent and,
therefore, voidable by Plaintiff.  (FAC ¶¶ 44-47.)  Plaintiff
further alleges that Wiesel and Greenberg both had "actual or
constructive knowledge of the FBAR Penalty" and that "the United
States had a reasonable expectation of payment from [] Ziegel's
failure to file his 2008 FBAR."  (FAC ¶ 56.)  Allegedly, as
recipients and beneficiaries of a fraudulent conveyance,

Defendants Wiesel, Greenberg, and Wolin are, therefore, individually liable to Plaintiff in the amount of the lesser of the value of Ziegel's interest in the Assadah Trust and UBS Account or the amount of the FBAR Penalty.  (FAC ¶¶ 47, 51.)

### D. **Defendant Greenberg's Contacts in New York**

As noted previously, Defendants Wiesel and Greenberg are both daughters of Ziegel and Defendant Wolin is Ziegel's granddaughter.  (FAC ¶¶ 38-39.)  Although Defendant Wiesel still lives in New York (FAC ¶ 6), Plaintiff acknowledges that throughout the relevant time period, Defendant Greenberg has lived in Israel.  (FAC ¶ 7.)  Nevertheless, Plaintiff asserts that Defendant Greenberg maintains sufficient contacts with the State of New York to be subject to personal jurisdiction.  (*Id.*)  Plaintiff first contends that Defendant Greenberg is a U.S. citizen and exercises the many benefits and privileges of U.S. citizenship, including by voting in the last two presidential elections.  (*Id.*)  Plaintiff further contends that Defendant Greenberg maintains an active New York voter registration in connection to which she listed a Queens, New York address as her residence.  (*Id.*)  Plaintiff also alleges that Defendant Greenberg filed federal income tax returns and New York state tax returns for each year during the 2015 – 2019 period.  (*Id.*)  Defendant Greenberg is alleged to have made nine visits to the state of New York between January 1, 2014 and December 31, 2019,

some of which lasted several months.  (*Id.*)  Plaintiff asserts
that Defendant Greenberg is the co-owner of residential real
property in Queens, New York, that was previously owned by her
deceased father, Ziegel, and in connection to which she
commenced and is engaged in two lawsuits in New York state
courts in Queens County.[2]  (*Id.*)  Defendant Greenberg also
commenced four additional lawsuits in New York state court,
Kings County, which relate to disputes with Defendant Wiesel
regarding real properties and business entities previously owned
by Ziegel and Ziegel's estate generally, in which Defendant
Greenberg claims an interest.  Defendant Greenberg commenced a
Queens County Surrogate Court proceeding relating to Ziegel's
estate wherein Defendant Greenberg moved to compel production of
Ziegel's last will and testament and petitioned for letters
testamentary in a probate proceeding involving Ziegel's estate.
(*Id.*)  Finally, Plaintiff alleges that Defendant Greenberg is
the sole or partial owner of eight personal bank accounts at

---

[2] The real property located at 135-41 78th Drive, Flushing, New York 11267 (the
"Queens Property") is co-owned by Defendants Greenberg and Wiesel and was
originally owned by Ziegel.  (ECF No. 131-3, Ptf. Opp. Ex. C, "N.Y. Sup. Ct.
Queens Cnty. 712033-2015 Compl." ¶ 7.)  In 2006, Ziegel executed a "Life
Estate Deed" designating his daughters, Defendants Greenberg and Wiesel, as
the beneficiaries of the ownership interest in the Queens Property, in equal
shares.  (N.Y. Sup. Ct. Queens Cnty. 712033-2015 Compl. ¶ 8.)  Upon Ziegel's
death in 2014, the ownership interest in the Queens Property transferred to
Defendants Greenberg and Wiesel and has since been the subject of multiple
lawsuits, including at least two in Queens County, which were commenced by
Greenberg against Wiesel in New York Supreme Court.  *See e.g.*, (ECF No. 131-
2, Ptf. Opp. Ex. B, "N.Y. Sup. Ct. Queens Cnty. 705219-2018 Compl."; N.Y.
Sup. Ct. Queens Cnty. 712033-2015 Compl.)

HSBC in New York and that Greenberg has an ownership interest in at least two New York limited liability companies.  (*Id.*)

## II.  Procedural History

Plaintiff's original Complaint was filed on May 17, 2017 before Judge Roslynn Mauskopf and named Annette Wiesel, as executrix of the estate of Leo Ziegel, as the sole Defendant. (Compl.)  On June 26, 2017, Wiesel's attorney notified Plaintiff that Wiesel had declined to serve as executrix.  (ECF No. 6.) Plaintiff subsequently learned that Ziegel's granddaughter, Wolin, was petitioning the Surrogate Court in Queens County to be appointed as fiduciary to the estate of Leo Ziegel.  (ECF No. 6.)  Once that petition was granted on January 30, 2018, Plaintiff filed an Amended Complaint, which replaced Wiesel with Wolin, as fiduciary of the estate of Leo Ziegel, and as the sole Defendant.  (AC.)  Upon consent of Defendant Wolin, Plaintiff filed a Second Amended Complaint on July 5, 2019, and named Wolin, as fiduciary of the estate of Leo Ziegel as a Defendant, as well as both of Ziegel's daughters, Defendants Greenberg and Wiesel.  (SAC.)

On February 7, 2020, Defendant Wiesel filed a fully briefed motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  In her motion to dismiss the SAC, Wiesel first argued that because the FBAR Penalty was penal in nature, rather than remedial, the FBAR

Penalty should be dismissed because it does not survive the death of the party on whom the penalty was imposed.  (ECF No. 65, "Sep. 28, 2020 M&O" at 5.)  The Court rejected Wiesel's argument, agreeing with courts that have held that "the FBAR penalty is 'primarily remedial with incidental penal effects,' and [therefore,] survived the taxpayer's death."  (Sep. 28, 2020 M&O at 11) (citing *U.S. v. Green*, 457 F. Supp. 3d 1262, 1272 (S.D. Fla. 2020)).

Second, Wiesel argued that the FBAR Penalty was untimely "under 31 U.S.C. § 5321(b)(2), which requires an action to be commenced within two years of the date [on which] the FBAR [P]enalty was assessed."  (Sep. 28, 2020 M&O at 5.)  The Court found that Plaintiff initiated the instant case on May 12, 2017, three days in advance of the two-year deadline.  The Court explained that because the May 12, 2017 original Complaint provided constructive notice to the estate of Leo Ziegel, the fact that Defendants may not have received actual notice in their individual capacities until months later did not warrant dismissal.  Accordingly, the Court ruled that Plaintiff's first cause of action to recover the FBAR Penalty was timely.  (Sep. 28, 2020 M&O at 11-13.)

Wiesel's third argument for dismissal centered on her assertion that a fraudulent conveyance required "a volitional act on the part of the conveyor or recipient(s)" such that the

9

death of a person cannot constitute a fraudulent transfer or
conveyance under federal or state law.  (Sep. 28, 2020 M&O at
6.)   The Court noted that "[d]espite Wiesel's insistence that
fraudulent conveyance requires 'action' on the part of the
conveyor or recipients to distribute assets, New York law is
clear that both fraudulent transfer and fraudulent conveyance
can occur upon death." (Sep. 28, 2020 M&O at 15.)  The Court
further held that under federal law, "Ziegel's interests in
[the] Assadah [Trust] and the [UBS] Account were involuntarily
transferred to the Daughters, as contingent co-beneficiaries,
upon Ziegel's death . . . [and that] [t]his transfer of []
assets fits squarely within" the definition of 28 U.S.C. §§
3301(6), 3304(a).  (Sep. 28, 2020 M&O at 14-15.)

As a corollary to her third argument, Wiesel argued that
because the Second Amended Complaint did not allege that
Defendants ever received a distribution from the Assadah Trust
or UBS Account, Plaintiff failed to state a claim for unjust
enrichment under New York law.  (Sep. 28, 2020 M&O at 6.)  The
Court rejected this argument as well, pointing to case law that
clearly establishes a claim for unjust enrichment may allege
"that one party has parted with money *or a benefit* that has been
received by another at the expense of the first party."  (Sep.
28, 2020 M&O at 16-17).  Because the Second Amended Complaint
adequately alleged "that Wiesel and Greenberg did receive

10

'something of value' – Ziegel's beneficial interest in the Assadah [T]rust . . . the United States has stated a claim for unjust enrichment." (Sep. 28, 2020 M&O at 17) (internal citation omitted).

Accordingly, Wiesel's motion to dismiss was denied in its entirety by Judge Mauskopf on September 28, 2020. (Sep. 28, 2020 M&O.) On October 29, 2020, Wiesel filed a notice of appeal with respect to Judge Mauskopf's Memorandum and Order denying Wiesel's motion to dismiss, but subsequently withdrew the appeal on December 14, 2020. Two weeks later, Defendant Greenberg filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 73.)

On July 6, 2021, this case was reassigned to the undersigned and the parties advised the Court of their intention to proceed to mediation. Defendant Greenberg withdrew her motion to dismiss pending the resolution of the mediation and pending jurisdictional discovery. On September 21, 2021, the parties filed a report indicating that the mediation did not result in a settlement. On February 2, 2022, Plaintiff filed a Third Amended Complaint. In light of additional facts gleaned from jurisdictional discovery however, the Court granted Plaintiff leave to file a Fourth Amended Complaint, which was filed on May 12, 2023. On August 23, 2023, Defendant Greenberg

11

renewed her motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  (ECF No. 130.)

## LEGAL STANDARD

### I.   Standard of Review

In the first instance, "plaintiff bears the burden of demonstrating [that the court has] personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). When considering a motion to dismiss for lack of personal jurisdiction, the Court must construe the pleadings and affidavits in the light most favorable to Plaintiff, and doubts must be resolved in Plaintiff's favor, notwithstanding a controverting presentation by the moving party.  *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). Although the Court "will not draw 'argumentative inferences' in the plaintiff's favor," the Court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal citation omitted). Nevertheless, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," nor can a Plaintiff overcome a motion to dismiss for lack of personal jurisdiction based on "conclusory non-fact-specific jurisdictional

12

allegations." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

In resolving a motion to dismiss for lack of personal jurisdiction, "a district court [has considerable] procedural leeway . . . [to] determine the motion on the basis of affidavits alone;" to "grant discovery;" or to "conduct a preliminary [evidentiary] hearing on the merits" of the motion. *Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.3d 56, 58 (2d Cir. 1981). In the absence of "a full-blown evidentiary hearing, . . . plaintiff need [only] make [] a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank N.A. v. Miller*, 664 F.2d 889, 904 (2d Cir. 1981). At the motion to dismiss stage, Plaintiff's prima facie showing must include "an averment of facts that, if credited [by the trier of fact], would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The Court may also consider materials outside the pleadings, "including any affidavits submitted by the parties[.]" *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 152 (E.D.N.Y. 2012).

In the instant case, the parties have conducted jurisdictional discovery regarding Defendant Greenberg's contacts with the State of New York, but no evidentiary hearing

13

has been held because no party has requested one. *See* (Apr. 28, 2023 Pre-Motion Conference Minute Entry) ("Given additional facts gleaned from jurisdictional discovery, the Court grants leave to [Plaintiff to] file a Fourth Amended Complaint"). Accordingly, "[plaintiff's] *prima facie* showing, [of what is] necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant" and the Court shall consider relevant materials included as exhibits to the parties' pleadings. *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010) (cleaned up).

## II. Personal Jurisdiction

A district court may only hear a case involving parties over which it has personal jurisdiction.  There are two forms of personal jurisdiction, general and specific.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  "General [or] all-purpose jurisdiction permits a court to hear 'any and all claims' against an [individual or] entity."  *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014).  "Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the [individual's] or entity's contacts with the forum."  *American Integrated Security Group, Inc. v. Terra Sound Technology LLC*,

14

No. 22-cv-2773 (AMD), 2023 WL 6308014, at *3 (E.D.N.Y. Sep. 28, 2023).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). First, "plaintiff's service of process upon the defendant must have been procedurally proper[.]" *Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*, 22 F.4th 103, 121 (2d Cir. 2021).

"Second, there must be a statutory basis for personal jurisdiction." *Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum Corporation*, 40 F.4th 56, 69 (2d Cir. 2022). "In litigation arising under federal statutes that do not contain their own jurisdictional provisions," such as 31 U.S.C. § 5321 and 22 U.S.C. § 3304, the statutory basis for a federal district court's exercise of personal jurisdiction is determined by the rules of the "state in which the court is located." *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). For the purposes of the instant motion to dismiss, the jurisdictional rules of the forum state are encapsulated in "the various subsections of New York's Civil Practice [Law] and Rules." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012).

Third, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v.*

15

*Palestine Liberation Organization*, 835 F.3d 317, 327 (2d Cir. 2016). In the instant case, "because the plaintiffs' assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696 (BMC), 2017 WL 4217115, at *4 (E.D.N.Y. Sep. 20, 2017) (quoting *Licci*, 673 F.3d at 60).

### A. General Jurisdiction

As set forth previously, the second prong of the personal jurisdictional analysis relates to the statutory basis for personal jurisdiction. "Federal district courts sitting in New York must . . . [determine] [] whether there is jurisdiction under New York law[.]" *Thackurdeen v. Duke University*, 660 F. App'x 43, 45 (2d Cir. 2016) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)).

New York's rule of general personal jurisdiction authorizes New York Courts to "exercise [general] jurisdiction over persons," N.Y. C.P.L.R. § 301, whose "affiliations with the State [of New York] are so 'continuous and systematic' as to render them essentially at home in" New York. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction may be exercised over non-domiciliary Defendants, but as the United States Supreme Court's

16

decision in *Goodyear* makes clear, "the paradigm forum for the exercise of general jurisdiction [over an individual] is the individual's domicile[.]"  564 U.S. at 924; *see also Daimler AAG v. Bauman*, 571 U.S. 117, 137 (2014)) ("only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.").

### B. Specific Jurisdiction

By contrast, the statutory basis for specific personal jurisdiction is codified by New York's long-arm statute, N.Y. C.P.L.R. § 302, which states, in relevant part, that a person who "commits a tortious act" outside of New York State "causing injury to a person or property within the state" is subject to the personal jurisdiction of New York courts "if [s]he (i) regularly does or solicits business, or engages in any other persistent course of conduct . . . within the state."  N.Y. C.P.L.R. § 302(a)(3)(i).

### C. Due Process

Once a court has determined that jurisdiction under the state's general jurisdiction statute, N.Y. C.P.L.R. § 301, or "under [the] state's long-arm statute [N.Y. C.P.L.R. § 302] is permissible as a matter of state law, 'the court [] must [then] decide whether such exercise comports with the requisites of due process.'"  *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).  "The Due Process Clause permits personal

jurisdiction over a defendant in any State with which the defendant has certain minimum contact[s]," which are evaluated based on "the relationship [between] the defendant, the forum, and the litigation" and where "maintenance of the suit" is reasonable insofar as it does not "offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 783 (1984) (internal quotation marks and citation omitted).

With respect to the "minimum contact[s]" inquiry, because the "'continuous and systematic' test of [N.Y. C.P.L.R. § 301] is not as broad as the 'minimum contacts' test of the due process clause, the exercise of jurisdiction over a foreign defendant under [N.Y. C.P.L.R. § 301] ordinarily comports with due process[.]" *M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 658 (S.D.N.Y. 2006). Specific jurisdiction, by contrast, only comports with due process if the Defendant "avails [herself] of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend [her] actions there . . . even if [the defendant is] not present in that State." *Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, No. 05-cv-10773 (RMB), 2007 WL 1489806, at *6 (S.D.N.Y. May 21, 2007).

The Court's evaluation of reasonableness under the Due Process clause focuses on the following five factors: "(1) the burden that the exercise of jurisdiction will impose on the

18

defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Typically, however, once a court determines that the threshold inquiry of personal jurisdiction has been satisfied, a Defendant may only overcome the exercise of personal jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  Even then, "[m]ost such considerations usually may be accommodated through [other] means short of a finding [that] jurisdiction [is] unconstitutional." *Id.*

## DISCUSSION

As set forth previously, the lawful exercise of personal jurisdiction by a federal court requires (1) procedurally proper service of process, (2) a statutory basis for either general or specific personal jurisdiction, and (3) adherence to the principles of due process.  *See Licci*, 673 F.3d at 59-60.  The

19

parties do not dispute that Defendant Greenberg has been
properly served.  *See* (Def. Mot. at 6) ("On May 12, 2023[,] a
Fourth Amended Complaint was served"); (Ptf. Opp. at 5-6)
("Greenberg was served . . . via the Hague Convention on . . .
May 12, 2023.").

Defendant Greenberg's objection relates to Plaintiff's
assertion that a statutory basis for both general and specific
personal jurisdiction authorizes this Court to adjudicate
Plaintiff's suit against her.  (Def. Mot. at 12-21.)  Defendant
Greenberg also asserts that any exercise of personal
jurisdiction by this Court would fail to comport with the
principles of due process.  (*Id.*)

## I.   N.Y. C.P.L.R. 301 General Jurisdiction

"[A]n individual's domicile in New York has become
something of a *sine qua non* for exercising all-purpose
jurisdiction[.]"  *Lebron v. Encarnacion*, 253 F. Supp. 3d 513,
519 (E.D.N.Y. 2017).  If an individual defendant is not
domiciled in New York, general jurisdiction can only be
exercised in "truly 'exceptional' circumstances."  *Reich v.
Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) (internal
citation omitted).  This is because an individual's home is
typically a unique and singular place that is easily
ascertainable.  *See Reich*, 38 F. Supp. 3d at 457 ("a state which
properly claims general jurisdiction over an individual is

typically singular"). Courts examining general jurisdiction conduct "an appraisal of [the individual's] activities in their entirety, nationwide and worldwide," *Lebron*, 253 F. Supp. 3d at 520, to identify whether the individual defendant engages in sufficiently "continuous, permanent, and substantial activity in New York" such that they may be considered "at home" in New York. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

For the reasons set forth below, Plaintiff has not asserted sufficient facts for a *prima facie* showing that Defendant Greenberg's contacts with the State of New York are so extensive as to comprise one of "only [] truly exceptional occasions that general jurisdiction may extend over individuals who are at home in a state that is not otherwise their domicile." *Lebron*, 253 F. Supp. 3d at 519.

First, it is undisputed that Defendant Greenberg is not "domiciled" in New York.[3]  Plaintiff nevertheless asserts that general jurisdiction is proper because Defendant Greenberg can

---

[3] "Residence and domicile are not interchangeable . . . while a person can have but one domicile, [s]he can have more than one residence." *Reich v. Lopez*, 38 F. Supp. 3d 436, 456 (S.D.N.Y. 2014) (quoting *Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.S 2d 514, (N.Y. 1984)).  Although Plaintiff alleges that Defendant Greenberg owns a residential property in New York, Plaintiff does not appear to assert that the Queens Property is Defendant Greenberg's domicile, or even residence.  Plaintiff asserts that Defendant "Greenberg lives in Israel" (FAC ¶ 7), and does not otherwise allege that Defendant Greenberg is domiciled in or resides in New York.  Accordingly, based on the facts alleged in the Fourth Amended Complaint, this Court cannot conclude that Defendant Greenberg is domiciled in New York.

still be "fairly [] regarded as at home" in New York (Ptf. Opp.
at 10) (citing *Lebron*, 253 F. Supp. 3d at 519), by virtue of the
"multitude of wide-ranging, continuous, and systematic ties" and
extensive contacts that Greenberg maintains with the State of
New York.  (Ptf. Opp. at 14.)  Specifically, Plaintiff points to
Defendant Greenberg's co-ownership of the Queens Property with
her sister, Wiesel, and Greenberg's involvement, including as a
plaintiff and petitioner, in numerous lawsuits and proceedings
in New York state courts relating to the Queens Property and
other assets that once belonged to Greenberg's father, Ziegel,
as evidence that Greenberg is "at home" in New York.  (Ptf. Opp.
at 11.)  Plaintiff also points to Defendant Greenberg's United
States citizenship, her active voting record in the 2016 and
2020 United States presidential elections, her use of a Queens
address to maintain her voter registration in New York, her
federal and New York state tax returns, her ownership interest
in New York corporations, and her maintenance of several New
York bank accounts as additional contacts that are of a
sufficiently "continuous, permanent, and substantial" nature as
to warrant general jurisdiction.  (FAC ¶ 7.)

        In response, Defendant Greenberg asserts that she is only
"at home" in Israel, where she has lived for the last 40 years.
(Def. Mot. at 14.)  Defendant Greenberg further asserts that her
ties to New York are based on familial connections that should

not be interpreted to constitute broad consent to general
jurisdiction in New York.  (*Id.*)  In addressing the New York
contacts upon which Plaintiff relies, Defendant Greenberg argues
that the Queens Property, which is not her residence; her use of
the New York court system, which is the only means by which she
can seek legal recourse in connection with Ziegel's former
assets; and her ownership interest in a limited number of New
York bank accounts and New York corporations do not make her "at
home" in New York.  (Def. Mot. at 15.)  Defendant Greenberg also
notes that she filed New York and federal tax returns as a
"[n]onresident" and that she listed her residence in Israel as
her home address in each of the relevant tax returns.  (Def.
Mot. at 5; ECF No. 131-10, Def. Mot. Ex. J, "2015–2019 Tax
Returns".)  Defendant Greenberg rejects the notion that her
United States citizenship should determine where she may be
considered "at home," particularly in light of her 40-year
residence in Israel.  (Def. Mot. at 16.)  Defendant Greenberg
also argues that because U.S. citizens who maintain a foreign
residence are statutorily authorized to vote in federal
elections, her voting record in the 2016 and 2020 elections has
no bearing on whether she is "at home" in New York.  (*Id.*)

Defendant Greenberg's contacts in the State of New York are
undoubtedly numerous and wide-ranging.  Nevertheless, even
accepting the assertions in the Fourth Amended Complaint as

23

true, Greenberg's contacts with the State of New York are not so extensive as to constitute the "truly exceptional occasion[] that general jurisdiction may extend over [an] individual[] who [is] 'at home' in a state that is not otherwise [her] domicile." *Lebron*, 253 F. Supp. 3d at 519 (citing *Sonera*, 750 F.3d at 225).

First, Plaintiff points to Greenberg's U.S. citizenship and her voting record in the 2016 and 2020 U.S. presidential elections and her voter registration status in New York as evidence that Greenberg is at home in New York.  (FAC ¶¶ 7a, 7i.)  As noted by Defendant Greenberg, U.S. citizens that maintain foreign residences are statutorily authorized to vote in United States elections.  *See* 52 U.S.C. § 10502(c) ("No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote . . . for President and Vice President . . . because of the failure of such citizen to comply with any durational residency requirement[.]").  Because Greenberg need not be a resident of New York to vote in a U.S. presidential election, Greenberg's participation in past federal elections does not establish that she is "at home" in New York. Similarly, although Greenberg's New York voter registration record appears to reflect a Queens, New York address[4], her voter

---

[4] Notably, the address reflected on Defendant Greenberg's voter registration records appears to match Defendant Wiesel's home address, not the Queens Property co-owned by Greenberg and Wiesel.  *Compare* (Greenberg Voter

registration status is designated as "Active Special Federal[.]"
(ECF No. 131-9, Ptf. Mot. Ex. I, "Greenberg Voter
Registration".)  Under New York law, "special federal voters"
are "citizen[s] of the United States now residing outside the
United States whose last domicile in the United States
immediately prior to [their] departure from the United States
was in the state of New York . . . even though such citizen[s]
[do] not now maintain a place of abode or domicile in the state
of New York[.]"  N.Y. Elec. Law § 11-200(1).  Greenberg's voter
registration status, therefore, weighs against a finding that
she is "at home" in New York.

Second, Greenberg's federal and New York tax returns also
weigh against a finding that she can reasonably be regarded as
"at home" in New York.  Filing a federal or New York State tax
return, on its own, does not establish a person's domicile or
home.  An individual's tax filings are only evidence of their
home to the extent those tax filings reflect a home address
within the relevant forum.  *See Reich*, 38 F. Supp. 3d at 456
("Plaintiffs should allege key indicia, such as that each
Defendant . . . lists on tax returns New York as [her] 'home
address.')  Indeed, New York Form IT-203, which is utilized by

_____

Registration) ("Address: 138-08 78 Drive, Flushing 11367-1136") *with* (N.Y.
Sup. Ct. Queens Cnty. 712033-2015 Compl. ¶ 2) ("Defendant Annette Wiesel . .
. is an individual with a residence address of 138-08 78th Drive, Flushing,
New York, 11367.")  Plaintiff does not allege that Defendant Greenberg has
ever lived in Defendant Wiesel's Queens home.

Defendant Greenberg, is specifically designated for nonresident tax filers.  Greenberg's decision to submit Form IT-203 tax filings during the relevant time period, to self-identify as a "taxpayer abroad" in her federal tax filings, and to list her Israeli residence as her "home address" on both her federal and New York State tax filings not only fail to support Plaintiff's assertion regarding the conclusions that Plaintiff seeks to draw from Greenberg's tax returns.  To the contrary, these actions weigh in favor of the exact opposite conclusion – that Defendant Greenberg is not "at home" in New York.

Third, Plaintiff points to Defendant Greenberg's travel to New York, including stays that lasted multiple weeks at times, as evidence of her "continuous and systematic contacts within the jurisdiction[.]"  (FAC ¶ 7) (Greenberg "visit[ed] New York nine times between January 1, 2014, and December 31, 2019 primarily to visit family").  Courts in this Circuit have deemed similar travel patterns insufficient to warrant general jurisdiction.  *See Lebron*, 253 F. Supp. 3d at 520 ("As noted above, the only New York contacts that the Plaintiff attributes to the Defendant are his occasional trips to the state. . . including between 9 and 12 [trips to] New York");  *Adam Mesh Trading Grp., LLC v. Bubba Trading Grp., LLC*, No. 16-cv-2645 (CM), 2016 U.S. Dist. LEXIS 82723, at *9-11 (S.D.N.Y. June 17, 2016) (noting that Defendant's "visit[s] [to] New York on a

26

monthly basis" were insufficient to establish general
jurisdiction); *Landoil Resources Corp. v. Alexander & Alexander
Services, Inc.,* 918 F.2d 1039, 1045 (2d Cir. 1990) (finding that
Defendant's "thirteen business trips . . . over a period of
eighteen months" were "insufficient to establish the . . .
presence within the state that New York law requires").

Even accepting as true that Defendant Greenberg visited New
York nine times over a six-year period and "spen[t] almost 1/3
of her time in New York toward the last 16 months of that
period," (Ptf. Opp. at 12), Greenberg's New York travel begs the
question of where she traveled or resided for the vast majority
of the time that she was presumably not in New York between
January 1, 2014 and December 31, 2019.  Viewing Greenberg's
activities as a whole, including her activity outside of New
York "nationwide and worldwide[,]" the Court does not conclude
that Greenberg's travels to New York establish that she is "at
home" in New York.  *Daimler*, 571 U.S. at 139 n.20.

Fourth, although Plaintiff points to Defendant Greenberg's
ownership of the Queens Property in support of the assertion
that Greenberg is "at home" in New York, Plaintiff does not
allege that the Queens Property is or can be considered
Defendant Greenberg's home.  See *Reich*, 38 F. Supp. 3d at 456
(declining to exercise general jurisdiction where "there [was]
no . . . allegation[] indicating that [Defendant's] residential

27

property is his home . . . [and because] Plaintiffs [did] not
offer any information regarding the portion of the year in which
[Defendant] lives at that property or any indication as to how
many other residences outside of New York [Defendant] may also
own.")  Indeed, at least two of Defendant Greenberg's state
court actions seeking partition of the Queens Property strongly
suggest that Defendant Greenberg's ability to access the Queens
Property is not unlimited.  *See* (ECF No. 131-2, *Greenberg v.
Wiesel*, N.Y. Sup. Ct., Queens Cnty., No. 705219/2018, Ptf. Opp.
Ex. B ¶¶ 16-17) ("Neither [Greenberg] nor [Wiesel] has resided
in the [New York Property] since they both became 50% tenants in
common [and] . . . [Wiesel] rented out the [New York Property]
without conferring with [Greenberg] . . . or even notifying"
Greenberg.)  Accordingly, Defendant Greenberg's co-ownership of
the Queens Property, which Greenberg asserts, under oath, has
been used by Wiesel to surreptitiously extract and retain rental
income, does not weigh in favor of a finding that Greenberg is
at home in New York.

Fifth, Plaintiff contends that Defendant Greenberg has
"avail[ed] herself of the jurisdiction of New York state courts
to file" several lawsuits in Queens County and Kings County,
including to "compel production of Ziegel's last will and
testament," such that general jurisdiction is warranted.  (FAC
¶¶ 7e, 7h.)  Plaintiff also points to Greenberg's use of "her

American counsel of record in this case to file six lawsuits" in New York State courts.  (FAC ¶ 7e, Ptf. Opp. at 11.)  For the purpose of asserting general jurisdiction, however, Defendant Greenberg's use of New York courts or counsel, even when combined with other alleged contacts does not rise to the level of the "'exceptional' case . . . where an individual is subjected to a state's general jurisdiction irrespective of where they are domiciled." *Reich*, 38 F. Supp. 3d at 457 (noting that although "Plaintiff [drew] attention to allegations of Defendants' . . . previous use of New York courts . . . even when considered together, [with the other alleged contacts], the supposed contacts . . . do not establish general jurisdiction where it is otherwise absent.")

Finally, Plaintiff points to Defendant Greenberg's "ownership interest in two New York limited liability companies" and Greenberg's "sole or partial ownership of multiple personal bank accounts with HSBC Bank in New York" as evidence that she can fairly be regarded as "at home" in New York.  (FAC ¶¶ 7f, 7g.)  Although courts have looked to a defendant's maintenance of bank accounts in a forum state as one factor in considering whether a defendant is at home in that state, courts have agreed that a defendant's ownership of New York bank accounts is not, alone, conclusive evidence that defendant is "at home" in New York.  *See Arroyo v. Mountain School*, 892 N.Y.S.2d 74, 76 (N.Y.

App. Div. 1st Dep't 2009) ("the fact that Milton has a New York bank account . . . does not subject it to general jurisdiction").  Importantly, context matters.  *See Daniel v. American Bd. of Emergency Medicine*, 988 F. Supp. 127, 223 (W.D.N.Y. 1997) ("the retention of [] firms for legal and financial services in connection with occasional [activities] is distinguishable from the retention of [financial services] in New York on a continuous basis for purposes of finding jurisdiction pursuant to Section 301.")

Plaintiff does not allege that Defendant Greenberg's ownership of the bank accounts and New York limited liability companies in question comprise a substantial portion of her assets or resources or that the bank accounts relate to her ongoing financial activity in New York.  Nor does Plaintiff proffer evidence that Defendant Greenberg is the primary user of the jointly held bank accounts.  In fact, at various points during the relevant time period, several of the bank accounts reflect a relatively low balance and infrequent activity.  *See* (ECF No. 131-11, Ptf. Opp. Ex. K, "Greenberg HSBC Bank Accounts" at 16-18) (reflecting an ending balance of $604.02 on January 13, 2015, and $0.00 on October 2, 2018.)  Notably, the statements connected with the bank accounts held solely in Defendant Greenberg's name reflect a home address in Israel – not New York.  *See e.g.* (ECF No. 131-11, Greenberg HSBC Bank

Accounts at 5.)  Only the jointly held bank accounts appear to
reflect a New York address.  *See e.g.* (ECF No. 131-11, Greenberg
HSBC Bank Accounts at 14.)  Moreover, Plaintiff does not
elaborate on the nature of the limited liability companies in
question, including what interests or purpose these corporations
purport to serve and how these corporations establish that
Defendant Greenberg is allegedly at home in New York.  Without
more, the Court is left with insufficient information to assess
the impact of Defendant Greenberg's limited liability companies.

Although each individual contact upon which Plaintiff
relies fails to support a finding of general jurisdiction, the
Court also considers the alleged contacts as a whole to
determine if the combined effect of Defendant Greenberg's
contacts is that she may fairly be regarded as at home in New
York.  This Court finds that no such conclusion can be drawn.
"[A]n appraisal of [Greenberg's] activities in their entirety,
nationwide and worldwide," *Lebron*, 253 F. Supp. 3d at 520,
strongly suggest that Greenberg is at home in Israel.  Contrary
to Plaintiff's assertion, several of the alleged New York
contacts that Plaintiff points to weigh against the conclusion
that Greenberg is at home in New York.  Apart from periodic
travels to New York to visit family and an inheritance dispute
that she commenced in the New York court system, Defendant
Greenberg appears to spend the vast majority of her time outside

of New York.  She has made clear in numerous forms of official documentation that she does not regard New York as her home, including her tax returns and voter registration status. Moreover, Plaintiff fails to point to any official documentation suggesting that Defendant Greenberg is at home in New York, such as a driver's license or telephone listing.  *See e.g., Comunale v. Gemma*, No. 18-cv-12104 (ALC), 2020 WL 635554, at *4 (S.D.N.Y. Feb. 11, 2020).  Even taking the alleged contacts together, they do not constitute sufficient grounds for general personal jurisdiction, pursuant to N.Y. C.P.L.R. § 301.

## II.  N.Y. C.P.L.R. 302(a)(3) Specific Personal Jurisdiction

In the alternative, Plaintiff also contends that this Court has specific personal jurisdiction over Defendant Greenberg pursuant to N.Y. C.P.L.R. § 302(a)(3)(i).  (Ptf. Opp. at 14.) "In applying N.Y. C.P.L.R. 302(a)(3)(i), Plaintiff must establish: (1) whether the allegations of the [FAC] concern a tortious act; (2) whether the act caused injury within the state of New York; and (3) whether the defendant engaged in additional contacts with New York, establishing a 'persistent course of conduct' toward New York." *Croskey v. Medical and Technical Services, Inc.*, No. 05-cv-6641 (LMM), 2006 WL 2347816, at *3 (S.D.N.Y. Aug. 10, 2006).

The Fourth Amended Complaint alleges that Defendant Greenberg, together with the other Defendants, committed a

tortious act outside of New York, by virtue of the fraudulent
conveyance of Ziegel's Assadah Trust and UBS Account, which
caused injury to a person or property within New York when the
Ziegel estate became insolvent at the time of Ziegel's death in
New York.  (Ptf. Opp. at 7, 15.)  Plaintiff further contends
that because Defendant Greenberg has availed herself of New York
courts to "obtain money or property once belonging to Ziegel,"
and because of Greenberg's other contacts within the state of
New York, Greenberg has engaged in a "persistent course of
conduct" that subjects her to specific personal jurisdiction
under N.Y. C.P.L.R. § 302(a)(3)(i).  (Ptf. Opp. at 15.)

    Defendant Greenberg argues that Plaintiff "has not
identified . . . any tortious act . . . [that she committed] in
New York or giving rise to injury in New York."  (Def. Mot. at
18.)  To the extent any "transfer or conveyance, fraudulent or
otherwise," is alleged by Plaintiff, Defendant Greenberg
contends that "Plaintiff does not allege that Defendant
Greenberg took any action or played any role."  (Def. Mot. at
18-19) (arguing that the fact that Greenberg and Wiesel "were
identified as contingent co-beneficiaries" to Ziegel's Assadah
Trust and UBS Account and the fact that Ziegel's interest in the
Assadah Trust and UBS Account was transferred to his daughters
upon his death does not alone establish that Defendant Greenberg
"received any distribution . . . or has any control" over the

Assadah Trust and UBS Account, nor does it mean any of the alleged "events took place in New York.")

### A. Tortious Act

First, Plaintiff has made a prima facie showing that the allegations in the Fourth Amended Complaint concern a tortious act.  Plaintiff's second and third causes of action allege fraudulent transfer under 28 U.S.C. § 3304 and N.Y. Debt. & Cred. Law §§ 273, 278, respectively.  Plaintiff contends that the fraudulent transfer of Ziegel's assets to Defendants Greenberg and Wiesel, which is alleged in Counts Two and Three had the effect of evading the civil monetary penalty for which Plaintiff seeks judgment in Count One.  Count Four is a claim for unjust enrichment arising out of the allegedly fraudulent transfer.

It is well established within this Circuit that an allegation of "fraudulent conveyance is a species of tort[.]" *Universitas Educ., LLC V. Nova Group, Inc.*, No. 11-cv-1590 (LTS), 2014 WL 3883371, at *6 (S.D.N.Y. Aug. 7, 2014); *see also Bank of Commc'ns v. Ocean Dev. Am. Inc.*, No. 07-cv-4628 (TPG), 2010 WL 768881 (S.D.N.Y. Mar. 8, 2010); *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 770 (E.D.N.Y. 1995); *Gallager v. Kirschner*, 632 N.Y.S.2d 948, 949-50 (N.Y. App. Div. 3d Dep't 1995) (Under New York law, "transfers which render a transferor insolvent are deemed fraudulent if . . .

34

[they are] made without fair consideration . . . [e]ven where the transfer occurs by operation of law upon the death of" the transferor.  In such cases, "a creditor may recover the interest transferred, as a fraudulent transfer" from the transferee).

Defendant Greenberg asserts that "Plaintiff [fails to] allege [either] that she has ever received any distribution from Assadah" or that "[she] took any action or played any role in connection with [the alleged] transfer or conveyance." (Def. Mot. at 18.)  These assertions mirror the same arguments raised by her sister and co-Defendant, Wiesel, and which were rejected by Judge Mauskopf in the thoroughly reasoned Memorandum and Order denying Defendant Wiesel's motion to dismiss. *See United States v. Wolin*, 489 F. Supp. 21, 31 (E.D.N.Y. 2020) ("Despite [Defendant's] insistence that fraudulent conveyance requires 'action' on the part of the conveyor or recipients to distribute assets, New York law is clear that both fraudulent transfer and fraudulent conveyance can occur upon death.")  Indeed, Greenberg belabors the same previously rejected arguments based on the exact case that Defendant Wiesel relied upon in her motion to dismiss.  Judge Mauskopf's reasoning in rejecting Defendant Weisel's misplaced attempt to rely on *North Carolina Department of Revenue v. The Kimberley Rice Kaestner 1992 Family Trust*, 139 S.Ct. 2213 (2019) is equally applicable to Defendant Greenberg's

reliance on the same case to demand the same outcome.  Judge

Mauskopf noted:

> Wiesel relies on *North Carolina Department of Revenue
> v. The Kimberley Rice Kaestner 1992 Family Trust*, 139
> S.Ct. 2213 (2019), in support of her position that a
> volitional act to distribute the assets is necessary
> for a fraudulent transfer.  In that case, the Supreme
> Court held that 'the presence of in-state
> beneficiaries alone does not empower a State to tax
> trust income that has not been distributed to the
> beneficiaries where the beneficiaries have no right to
> demand income and are uncertain to ever receive it.'
> 139 S.Ct. at 2221.  However, the Supreme Court
> expressly limited this holding to the specific facts
> presented, where the beneficiaries 'had no right to
> demand income and were uncertain to receive it.'  *Id*.
> This has no implications for the entirely
> distinguishable question of whether the Government, in
> attempting to collect an FBAR penalty, should be able
> to reach Ziegel's interest in assets that
> automatically transferred to [Greenberg and Weisel] at
> the time of his death.  Weisel does not present any
> evidence suggesting that she and Greenberg 'have no
> right to demand income and are uncertain of ever
> receiving it,' and thus *North Carolina Department of
> Revenue* does not apply.

Sep. 28, 2020 M&O at 14.

Here too, Defendant Greenberg fails to "present any

evidence suggesting that she and [Wiesel] have no right to

demand income and are uncertain of ever receiving it[.]"  Sep.

28, 2020 M&O at 14.  This Court sees no reason why Defendant

Greenberg's repetition of previously rejected and identical

arguments and her citation to the same case warrants a different

outcome here.  As set forth in the Sep. 28, 2020 M&O, "[t]he

facts regarding what distributions may be demanded by the

Daughters may [] be revisited upon a motion for summary judgment." Sep. 28, 2020 M&O at 16 n.2. At the prima facie stage, however, the Fourth Amended Complaint "state[s] a plausible claim for fraudulent transfer or conveyance under federal and state law," Sep. 28, 2020 M&O at 16, and "fraudulent conveyance is a species of tort[.]" *Nova*, 2014 WL 3883371, at *6. Accordingly, Plaintiff has alleged sufficient facts to satisfy the first prong of the specific personal jurisdiction analysis under N.Y. C.P.L.R. § 302(a)(3)(i) at the prima facie stage.

### B. Injury in New York

Second, Plaintiff has made a prima facie showing that the alleged fraudulent conveyance caused an injury within the State of New York. Specifically, Plaintiff alleges that because Ziegel died in New York and became insolvent in New York as a result of the fraudulent conveyance triggered by his death, the situs of the injury, for the purposes of this Court's jurisdictional analysis, is New York.

Defendant Greenberg argues that the fraudulent conveyance of Ziegel's interest in the Assadah Trust and UBS Account was not alleged to have taken place in New York. (Def. Mot. at 19-20.) However, the relevant inquiry is not limited to where the fraudulent conveyance took place. "The Second Circuit has interpreted the injury requirement in § 302(a)(3) to mean that

37

the 'original event which caused the injury' must have taken place in New York . . . [and that] [t]his original event is . . . generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 327 (S.D.N.Y. 2013) (internal citation omitted). "The key question in this analysis is the timing and location of the initial injury, as distinct both from the tortious act itself and from the damages suffered later[.]" *Delaware*, 939 F. Supp. 2d at 327. Where a "non-physical commercial injury" is alleged, the "situs of [the] . . . injury for jurisdictional purposes is where 'the critical events associated with the dispute took place.'" *Faherty v. Fender*, 572 F. Supp. 142, 149 (S.D.N.Y. 1983).

Here, the situs of the injury is New York. The critical events associated with Plaintiff's alleged injury are Ziegel's death in New York and the subsequent insolvency of the Ziegel's estate, which entered probate in a Queens County Surrogate Court in New York. This insolvency was triggered by the transfer of Ziegel's estate assets to Defendants, which in turn caused the alleged impediment to Plaintiff's attempt to collect the penalty against the Zeigel estate. The "original event that caused the injury" *Delaware*, 939 F. Supp. 2d at 327, is Ziegel's death and the insolvency of his estate, both of which occurred in New

York.  The allegedly fraudulent conveyance of estate assets to Defendants is the initial tort alleged by Plaintiff.  The frustration of Plaintiff's ability to collect its civil monetary penalty, by virtue of the aforementioned "original events," is the "final economic injury" alleged.  *Delaware*, 939 F. Supp. 2d at 327.  *See also Nova*, 2014 WL 3883371, at *6 ("Here the situs of the injury is New York, because the fraudulent conveyance[] impeded Petitioner's ability to enforce its New York judgment[]"); *see also Universitas Education, LLC v. Benistar*, No. 20-cv-738 (JAM), 2021 WL 965794, at *14 (D.Conn. Mar. 15, 2021) (agreeing that specific jurisdiction under N.Y. C.P.L.R. § 302(a)(3) was proper where Defendants "fraudulently [] render[ed] the [Plaintiff's] prospective New York judgment unrecoverable, despite the fact that the actions may have been performed" outside of New York)(internal quotation marks and citation omitted).

Ziegel's death took place in New York and his estate entered probate in a Queens County Surrogacy Court in New York. This is, of course, precisely why Defendant Greenberg is anchored to and asserted her claims in the New York court system to vindicate her rights with respect to Zeigel's estate and former assets.  *See* (Def. Mot. at 15) ("The partition action had to take place in New York because the property was located in New York"); (FAC ¶ 7h) ("on or about December 8, 2015,

39

[Defendant Greenberg moved] to compel production of Ziegel's last will and testament"); (ECF No. 131-13, Ptf. Opp. Ex. M, Queens County Surrogacy Court Petition for Production of Last Will and Testament.)  Accordingly, Plaintiff has alleged sufficient facts to establish New York as the situs of the alleged injury and has satisfied the second prong of the jurisdictional analysis relating to Defendant Greenberg under N.Y. C.P.L.R. 302(a)(3)(i) at the prima facie stage.

### C. Persistent Course of Conduct

Third, Plaintiff has made a prima facie showing that Defendant Greenberg engaged in a "persistent course of conduct" in the State of New York.  Although Defendant Greenberg's New York contacts, as alleged, are not so extensive as to support a finding of general jurisdiction under N.Y. C.P.L.R. § 301, Greenberg's contacts do rise to the less demanding standard for a Defendant's "persistent course of conduct" under N.Y. C.P.L.R. 302(a)(3)(i).

The New York Court of Appeals has repeatedly affirmed that "clause (i) [of N.Y. C.P.L.R. § 302(a)(3)] does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the . . . test of CPLR 301." *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (N.Y. 1997).  Instead, N.Y. C.P.L.R. § 302(a)(3)(i) "require[s] something more than [a] 'one shot' single business transaction[.]" *Id.*  "[T]he extent

of contacts required" must be "substantial enough to make it reasonable to subject [the Defendant] to jurisdiction and feasible for [the Defendant] to defend [suit] here." *Bouchard v. La Parmigiana S.R.L.*, No. 15-cv-0865 (LEK), 2016 WL 81496, at *3 (N.D.N.Y. Jan. 7, 2016) ("302(a)(3)(i) necessitates some ongoing activity within New York State."). Moreover, the "'persistent course of conduct' provision may be satisfied by non-commercial, non-business activities[.]" *Ark 301 v. Diocese of Brooklyn*, No. 512965-2020 (SBK), 2023 WL 6781422, at *5 (N.Y. Sup. Ct. Kings Cnty. Oct. 5, 2023). *See e.g., Porcello v. Brackett*, 446 N.Y.S.2d 780, 78 (N.Y. App. Div. 4th Dep't 1981) (finding that the "'persistent course of conduct' provision may be broad enough to encompass" the Defendant's activities in New York "by virtue of [the Defendant's] three-semester attendance at Cornell" even though the Defendant was an out-of-state student); *David Tunick, Inc. v. Kornfeld,* 813 F. Supp. 988, 991 (S.D.N.Y. 1993) (finding that the Defendant engaged in a persistent course of conduct in New York by virtue of "substantial non-business activities in New York[,]" including the exhibition of "several of [his] paintings . . . in museums located in or around New York City.").

Moreover, the "persistent course of conduct" test under N.Y. C.P.L.R. § 302(a)(3)(i) does not require a "nexus between the [alleged] New York state contacts . . . and the cause of

41

action being sued upon." *Franklin v. Coloplast Corp.*, No. 18-cv-1413 (DNH), 2019 WL 5307085, at *7 (N.D.N.Y. Oct. 21, 2019). Instead, the "persistent course of conduct" requirement is akin to an "extra ingredient which the statute prescribes in order to make it reasonable for New York to require the defendant to answer here for [her] tortious act." *Hearst Corp. v. Goldberger*, No. 96-cv-3620 (PKL)(AJP), 1997 WL 97097, at *15 (S.D.N.Y. Feb. 26, 1997).

Defendant Greenberg's course of conduct in the State of New York far exceeds the "'one shot' single business transaction." *Hearst,* 1997 WL 97097, at *14 (quoting 1 Weinstein, Korn & Miller, N.Y. C.P.L.R. ¶ 302.14 (1996)) (internal quotation marks omitted).  Defendant Greenberg initiated multiple New York lawsuits concerning asset transfers at the Ziegel estate, triggered by Ziegel's death, including with respect to the Queens Property in which she owns a fifty percent stake and from which she seeks to recover rental income.  (FAC ¶ 7.)  Defendant Greenberg also frequently travels to New York, including for weeks at a time.  (FAC ¶ 7.)  Defendant Greenberg's visits to New York, her ownership of property in New York, and her litigation in New York relating to her father's estate, which is probated in a New York court, taken together, are "regular, persistent, [and] substantial" courses of conduct in New York that warrant a finding of specific jurisdiction over Greenberg

under N.Y. C.P.L.R. § 302(a)(3)(i).  These contacts represent
allegations of "*ongoing* activity within New York State" that
satisfy Plaintiff's burden of demonstrating a "persistent course
of conduct" under N.Y. C.P.L.R. § 302(a)(3)(i) at the prima
facie stage.  *Ingraham,* 90 N.Y.2d at 597.

Moreover, it is reasonable that Defendant Greenberg be
required to answer allegations of tortious conduct in connection
to the same estate regarding which she has repeatedly invoked
the protection and authority of New York courts to recover
estate assets.  Defendant Greenberg has filed numerous lawsuits
seeking to collect income from assets previously held by Ziegel
and jointly inherited by the other Ziegel heirs, demanding
accounting of Ziegel's previously held assets, and moving for
disclosure of Ziegel's final will and testament.  Defendant
Greenberg's argument that she should be free to seek relief from
New York courts by asserting her rights in connection with
Ziegel's estate on the one hand, and simultaneously contest any
assertion of personal jurisdiction by a court in New York that
will adjudicate allegations of tortious conduct in connection
with the same estate on the other hand, is untenable.

Accordingly, Plaintiff has alleged sufficient facts to
establish that Defendant Greenberg engaged in a persistent
course of conduct in the state of New York, and has satisfied

43

the third prong of the jurisdictional analysis under N.Y.
C.P.L.R. § 302(a)(3)(i) at the prima facie stage.

**III. Due Process**

Finally, the principles of due process are not offended by
the Court's exercise of specific personal jurisdiction over
Defendant Greenberg pursuant to N.Y. C.P.L.R. § 302(a)(3)(i).

It is axiomatic that "a state court may exercise personal
jurisdiction over a nonresident defendant only so long as there
exist 'minimum contacts' between the defendant and the forum
state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,
291 (1980). Once minimum contacts have been established, the
Court must assess whether "the prospect of defending a suit in
the forum State comport[s] with traditional notions of 'fair
play and substantial justice.'" *LaMarca v. Pak-Mor Mfg. Co.*,
713 N.Y.S.2d 304, 309 (N.Y. 2000) (quoting *Burger King*, 417 U.S.
at 476).

**A. Minimum Contacts**

"A non-domiciliary tortfeasor has 'minimum contacts' with
the forum State - and may thus reasonably foresee the prospect
of defending a suit there - if [she] purposefully avails
[herself] of the privilege of conducting activities within the
forum state." *LaMarca*, 713 N.Y.S.2d at 308 (quoting *World-Wide
Volkswagen*, 444 U.S. at 297). This "constitutional inquiry
'focuses on the relationship among the defendant, the forum, and

44

the litigation'" such that jurisdiction may be exercised only over "defendants who have purposefully 'reached out beyond' their State and into another[.]" *Williams v. Beemiller, Inc.*, 130 N.Y.S.3d 237, 240 (N.Y. 2019) (internal citation omitted).

As previously noted, Defendant Greenberg has availed herself of the benefits of New York courts to initiate several lawsuits in connection with her claims to assets in Ziegel's estate. Defendant Greenberg has filed at least two lawsuits against her sister and co-Defendant, Wiesel, in Queens County as well as four lawsuits against Wiesel in Kings County. (FAC ¶ 7.) Each of Defendant Greenberg's lawsuits relate to the partition, accounting, or transfer of assets that previously belonged to Ziegel and in connection to which Ziegel's estate entered probate upon his 2014 death in New York. (*Id.*) In several of these lawsuits, Defendant Greenberg has alleged that Wiesel engaged in self-dealing, gross negligence and intentional misconduct in the time period leading up to Ziegel's death and immediately after Ziegel's death in order to obscure or divert the distribution of Ziegel's assets following Ziegel's death. *See e.g.,* (ECF Nos. 131-3, Ptf. Opp. Ex. C, N.Y. Sup. Ct. Queens Cnty. 712033-2015 Compl. ¶¶ 28-29; 131-5, Ptf. Opp. Ex. E, N.Y. Supp. Ct. Kings Cnty. 514223-2015 Compl. ¶¶ 13-14; 131-6, Ptf. Opp. Ex. F, N.Y. Supp. Ct. Kings Cnty. 514367-2015 Compl. ¶ 17.) In connection with at least one of her lawsuits, Defendant

45

Greenberg has moved to compel production of Ziegel's last will and testament.  (FAC ¶ 7; ECF No. 131-13, Ptf. Opp. Ex. M, Queens County Surrogacy Court Petition for Production of Last Will and Testament.)  Although Defendant Greenberg has not explicitly named the portion of Ziegel's estate that is the subject of Plaintiff's alleged injury, the Assadah Trust and UBS Account, Greenberg has made ample use of New York courts to demand an accounting of Ziegel's estate generally and to demand that the initial distribution of assets triggered by Ziegel's death comports with the rights afforded to her under New York law.  In the instant case, Plaintiff seeks similar recourse. Like Defendant Greenberg, Plaintiff has filed claims against the Defendants based on the assertion that the United States is the victim of tortious conduct that resulted in Plaintiff's inability to recover federal penalties from assets that were owed from Ziegel's estate following Ziegel's death in New York. As the United States Supreme Court aptly noted, "where [an] individual[] purposefully derive[s] benefit from their activities" in the forum state, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 475.

### B. Fair Play and Substantial Justice

The test for determining whether "the prospect of defending a suit in the forum State comport[s] with traditional notions of 'fair play and substantial justice,'" which is also referred to as the reasonability prong of the due process analysis, requires that a Defendant who has "purposefully [] directed [] activities at forum residents [] present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *LaMarca*, 713 N.Y.S.2d at 309 (quoting *Burger King*, 417 U.S. at 477). Defendant Greenberg has not presented any such case. Nor can the Court conceive of a compelling reason to rule that Greenberg is excused from defending her interests in this action.

Moreover, none of the factors outlined in *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987) warrant a finding that asserting personal jurisdiction over Defendant Greenberg in this case would be unreasonable. 480 U.S. at 113 ("A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies[]") (internal citation omitted). Defendant Greenberg is already engaged in several other lawsuits relating

47

to her father's estate, all of which she initiated of her own volition with the assistance of the same counsel that is defending her in the instant action.  This Court sees no reason why defending this case would present an untenable burden on Defendant Greenberg.  Nor has Defendant Greenberg made any argument that she would be unreasonably burdened by the prospect of defending against this case.  By contrast, Plaintiff and the state of New York have a strong interest in resolving any and all disputes related to or arising out of estates probated in its Courts.  The state of New York also "has an interest in providing a convenient forum for [a Plaintiff] . . . who was injured in New York and may be entitled to relief under New York law."  *LaMarca*, 713 N.Y.S.2d at 310.  Finally, as in *LaMarca*, "the interstate judicial system[]" and federal courts have a strong interest in "efficient [and orderly] resolution of controversies."  713 N.Y.S.2d at 310.  The exercise of personal jurisdiction over all Defendants "would be orderly" and lead to the most efficient outcome "to allow plaintiff to sue all named defendants in New York" in one lawsuit.  *Id*.

"Fair play involves a set of corresponding rights and obligations."  *LaMarca*, 713 N.Y.S.2d at 310.  Defendant Greenberg has called upon multiple New York state courts to vindicate her rights in connection with the probate of Ziegel's estate.  Therefore, it is not "at all unfair to render [her]

48

judicially answerable for [her] actions in this state" as the claims relate to that same estate.  *Id.*  Accordingly, Plaintiff has alleged sufficient facts to establish that this Court's exercise of specific personal jurisdiction over Defendant Greenberg does not offend the principles of Due Process.

Because the Court finds that Plaintiff has made a prima facie showing of specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(i) that is consistent with the principles of Due Process, the Court need not address Defendant Greenberg's arguments with respect to N.Y. C.P.L.R. § 302(a)(3)(ii) or N.Y. C.P.L.R. § 302(a)(4).

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant Greenberg's motion to dismiss the Fourth Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is hereby **DENIED**.  The parties shall confer and advise the Court of how they intend to proceed within five business days of this Memorandum and Order.


**SO ORDERED.**
Dated: February 26, 2024
       Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

49